149   367
j 150   506
j 150   514
149   367
j 157   143
149   367
162   243

149   367
a165   522

149   367
171   265

THE PEOPLE OF THE STATE OF NEW YORK ex rel. FRED G. EINSFELD, Appellant, v. JOSEPH MURRAY et al., Commissioners of Excise of the City of New York, Respondents.

1. CONSTITUTIONALITY OF THE LIQUOR TAX LAW OF 1896 — APPROPRIATION OF EXCISE MONEYS TO LOCALITIES — NOT A TWO-THIRDS BILL — CONSTITUTION, ART. III, § 20.   The provision of the Liquor Tax Law of 1896 (Chap. 112, § 13), which declares that two-thirds of the excise taxes collected thereunder shall belong to the town or city in which the traffic was carried on from which the revenues were received, is in accordance with an uninterrupted understanding that the legislature may devote excise moneys to the uses of the localities in which they are collected, by majority bill, and did not render the bill for the law subject to the requirement of the Constitution (Art. III, § 20) that "the assent of two-thirds of the members elected to each branch of the legislature shall be requisite to every bill appropriating the public moneys or property for local or private purposes."

2. NOT A "TAX LAW."   Chapter 112 of the Laws of 1896, known as the Liquor Tax Law, is not a "tax law," in the proper sense, as it does not have for its primary purpose the raising of revenue for the support of the government; but it is a law enacted under the police power, the exactions of which, although denominated taxes, are imposed for the primary purpose of regulating and controlling the liquor traffic.

3. NOT A "CITY LAW" — CLASSIFICATION OF CITIES — CONSTITUTION, ART. XII, § 2.   The Liquor Tax Law of 1896, being a general state excise law, with such special provisions and adaptations to localities as to the legislature seemed proper, is neither a general or special "city law," nor does it relate to the "property, affairs or government of cities," within the meaning of the Constitution (Art. XII, § 2), and hence is not invalidated by the fact that, in fixing the excise taxes upon the business of trafficking in liquors, it (§ 11) graduates them in cities according to population, not following the classification of cities fixed by the Constitution.

4. BILL NOT SUBMITTED TO MAYORS OF CITIES — CONSTITUTION, ART. XII, § 2.   The Liquor Tax Law of 1896, not being a "special city law," within the meaning of the Constitution (Art. XII, § 2), the bill therefor was not required to be submitted to the mayors of the cities affected thereby, before its final enactment.

*People ex rel. Einsfeld* v. *Murray*, 4 App. Div. 185, affirmed.

(Argued April 30, 1896; decided May 26, 1896.)

APPEAL from judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 25, 1896, which affirmed a judgment entered upon a decision

of the court at Special Term, dismissing a writ of certiorari brought by the relator ·to review the action of the board of excise of the city of New York in refusing to grant his application for a license to sell strong and spirituous liquors upon the sole ground that by the terms of the Liquor Tax Law (Chap. 112, Laws of 1896) there was no power in the board to issue a license for a term expiring later than April 30. 1896.

*Joseph H. Choate, Samuel Untermyer, Louis Marshall* and *Ashbel P. Fitch* for appellant. The act under consideration is a taxing law, as distinguished from an act licensing the liquor traffic. (*Adler* v. *Whitbeck*, 44 Ohio St. 539; *Anderson* v. *Brewster*, 44 Ohio St. 576; *Youngblood* v. *Sexton*, 32 Mich. 406; Cooley on Taxation, chap. 18.) Whether the act be regarded as creating a tax or a license, it is unconstitutional, because it was passed in violation of article 3, section 20, of the State Constitution, which declares that "the assent of two-thirds of the members elected to each branch of the legislature shall be requisite to every bill appropriating the public moneys or property for local or private purposes." (Laws of 1896, chap. 112, §§ 40, 44; *People ex rel.* v. *Comrs. of Highways*, 54 N. · Y. 276; *Trustees of Exempt Firemen's Fund* v. *Roome*, 93 N. Y. 329; *Rumsey* ·v. *N. Y. & N. E. R. R. Co.*, 130 N. Y. 88; *People ex rel. Adsit* v. *Allen*, 42 N. Y. 378; *State* v. *Bordelon*, 6 La. Ann. 68; *State ex rel.* v. *Steele*, 37 La. Ann. 353; *People ex rel.* v. *Brooks*, 16 Cal. 11; *Carr* v. *State*, 127 Ind. 204; *Ristine* v. *State*, 20 Ind. 328; *Campbell* v. *Comrs.*, 115 Ind. 591.) The act is also unconstitutional, because section 11, which fixes the excise taxes upon the business of trafficking in liquors, creates a classification of cities at variance with that created by article XII, section 2 of the State Constitution, and seeks to legislate with respect to cities of the state on the basis of such unconstitutional classification. (Const. of 1846, art. 3, § 18; *In re N. Y. E. R. R. Co.*, 70 N. Y. 327; *Treanor* v. *Eichhorn*, 74 Hun, 58; *In re Church*, 92 N. Y. 1; *In re East*

*River Bridge Co.,* 75 Hun, 122; *People ex rel.* v. *Bd. Suprs.,* 147 N. Y. 1; *W. Nat. Bank* v. *Cheney,* 94 Ill. 430; *Ayars' Appeal,* 122 Penn. St. 266; *State ex rel.* v. *Hammer,* 42 N. J. L. 435; *Anderson* v. *City of Trenton,* 42 N. J. L. 486; *Goldberg* v. *Dorland,* 56 N. J. L. 364; *Alexander* v. *City of Elizabeth,* 56 N. J. L. 71.) The act is likewise unconstitutional because it has not been submitted to the several cities affected by its provisions as required by the cities article. (Const. of N. Y. art. 12, § 2; *Sutterley* v. *Camden,* 41 N. J. L. 405; *People* v. *C. P. R. Co.,* 83 Cal. 393; *City of Pasadena* v. *Stimson,* 91 Cal. 239; *Desmond* v. *Dunn,* 55 Cal. 242; *State* v. *Anderson,* 44 Ohio St. 247.) The act is likewise unconstitutional, because it is a tax law, and imposes upon different individuals engaged in the same class of traffic taxation which is not uniform throughout the state, and makes such taxes a lien on the property of the person carrying on the traffic. It thus not only operates as a taking of property without due process of law, but it abridges the privileges and immunities of citizens of the United States within the meaning of both the State and Federal Constitutions. (*Exchange Bank* v. *Hines,* 3 Ohio St. 1; *Township of Pine Grove* v. *Talcott,* 19 Wall. 675; *United States* v. *Singer,* 15 Wall. 111–121; *Head Money Cases,* 112 U. S. 580; *Pollock* v. *F. L. & T. Co.,* 157 U. S. 592; *Senior* v. *Ratterman,* 44 Ohio St. 661; *People ex rel.* v. *Albertson,* 55 N. Y. 50; Cooley on Const. Lim. [6th ed.] 206; *Curtis* v. *Whipple,* 24 Wis. 356; *Tyson* v. *School Directors,* 51 Penn. St. 9; *Freeland* v. *Hastings,* 10 Allen, 570; 58 Maine, 590; *Lowell* v. *Boston,* 111 Mass. 454.) The act is unconstitutional, because by section 23 it prohibits persons from trafficking in liquors who are non-residents of the state of New York, and likewise prohibits any co-partnership from trafficking, unless one or more members owning at least one-half interest in the business are residents of the state. (*Walling* v. *Michigan,* 116 U. S. 446.)

*T. E. Hancock, Attorney-General,* for respondents. The act did not require the assent of two-thirds of the members

47

of the legislature, and was not a bill appropriating public moneys or property for local or private purposes. (Const. N. Y. art. 3, § 20; *Metr. Board of Excise* v. *Barrie*, 34 N. Y. 662; *People ex rel.* v. *Dayton*, 55 N. Y. 367; *Fort* v. *Burch*, 6 Barb. 73; *People* v. *Quigg*, 59 N. Y. 86; *Power* v. *Village of Athens*, 99 N. Y. 602; *People ex rel. Presmeyer* v. *Comrs. of Police*, 59 N. Y. 96; *Bertholf* v. *O'Reilly*, 74 N. Y. 509–526; *In re McPherson*, 104 N. Y. 306; Laws of 1880, chap. 233; *Bd. of Suprs.* v. *Allen*, 99 N. Y. 532; *People* v. *Alden*, 112 N. Y. 121.) The act in question is an assertion of the ordinary police power of the state, and in no manner conflicts with the Constitution of the United States. (*License Cases*, 5 How. [U. S.] 504; *Bartmyer* v. *Iowa*, 18 Wall. 129; *Mugler* v. *Kansas*, 123 U. S. 627; Cooley on Const. Lim. [6th ed.] 716; *In re Hoover*, 30 Fed. Rep. 51; *Walton* v. *State*, 62 Ark. 197; *Crowley* v. *Christensen*, 137 U. S. 86; *Bertholf* v. *O'Reilly*, 74 N. Y. 509; *Metr. Board of Excise* v. *Barrie*, 34 N. Y. 657–667; *Block* v. *Jacksonville*, 36 Ill. 301; *Commonwealth* v. *Brennan*, 103 Mass. 70; *Calder* v. *Kurby*, 5 Gray, 507.) It was not necessary to submit the bill to the cities of the state for their approval or acceptance. (*Metr. Bd. of Excise* v. *Barrie*, 34 N. Y. 657; Sedgwick on Stat. Const. [2d ed.] 409; *People ex rel.* v. *Briggs*, 50 N. Y. 553, 558; *People ex rel.* v. *Comstock*, 78 N. Y. 356; *Gordon* v. *Cornes*, 47 N. Y. 608, 616, 617; Cooley on Const. Lim. 210, 211; *Sage* v. *City of Brooklyn*, 89 N. Y. 189; *People ex rel.* v. *McClave*, 99 N. Y. 83.)

*Julius M. Mayer* for respondents. The statute is a licensing law. It is an exercise of the police power of the state. It permits the conduct of a traffic which, without such permission, it declares unlawful. It taxes the privilege of trafficking in liquor, and does not tax the liquor itself. It does not tax property. The excise taxes need not be uniform. (*Leavenworth* v. *Booth*, 15 Kans. 627; *State* v. *Hipp*, 38 Ohio St. 199; *Butzman* v. *Whitbeck*, 42 Ohio St. 223; *King* v. *Cappellar*, 42 Ohio St. 218; *State* v. *Sinks*, 42 Ohio St. 345; *Pleuler*

v. *State,* 11 Neb. 547; *Youngblood* v. *Sexton,* 32 Mich. 419; *Adler* v. *Whitbeck,* 44 Ohio St. 657; *Metr. Bd. of Excise* v. *Barrie,* 34 N. Y. 657; Laws of 1892, chap. 399; Laws of 1896, chaps. 112, 327; *In re McPherson,* 104 N. Y. 316.) The classification in the bill is not repugnant to the Constitution. It was not necessary to submit the bill to the mayors of the cities of the first class. (*In re N. Y. El. R. R. Co.,* 70 N. Y. 327; *In re Church,* 92 N. Y. 1; *Tonnele* v. *Hall,* 4 N. Y. 140; *District Township* v. *Dubuque,* 7 Clarke [Iowa], 262; *People* v. *Havnor,* 149 N. Y. 196; *Williams* v. *People,* 24 N. Y. 405; *In re Bayard,* 25 Hun, 546; *Weil* v. *Calhoun,* 25 Fed. Rep. 865; *State* v. *Parker,* 26 Vt. 357; *Vil. of Gloversville* v. *Howell,* 70 N. Y. 287.) Two-thirds of the excise taxes to be collected under the act are not public moneys of the state, and the provisions of section 13 are not in contravention of article 3, section 20, of the Constitution. (*Ristine* v. *Indiana,* 20 Ind. 338; *State* v. *Bordelon,* 6 La. Ann. 69; *Carr* v. *State,* 127 Ind. 204; *Campbell* v. *Board of Comrs.,* 115 Ind. 591; *McCauley* v. *Brooks,* 16 Cal. 11.) Every presumption is in favor of a statute, and to justify the court in pronouncing it an unauthorized expression of the legislative will it must be made to appear that, when fairly and reasonably construed, it is in clear and substantial conflict with some provision of the Constitution. If the act and the Constitution can reasonably be so construed as to enable both to stand, it is the duty of the court to give them that construction. (*Sweet* v. *City of Syracuse,* 129 N. Y. 316.)

ANDREWS, Ch. J.   The sole question involved in this appeal is the constitutionality of the act of the legislature, approved March 23, 1896, entitled " An act in relation to the traffic in liquors and for the taxation and regulation of the same and to provide for local option." The constitutionality of the act is assailed on three principal grounds : (1) That it appropriates the public moneys or property of the state to private and local purposes, and not having been passed by a two-thirds vote of the legislature, is void under art. III, sec. 20 of the

State Constitution ; (2) that section 11 of the act, which fixes the excise tax upon the business of trafficking in liquors, creates a classification of cities at variance with that created by art. XII, sec. 2 of the Constitution ; (3) that the act is a special city law as to each of the cities of the state, which, under art. XII, sec. 2 of the Constitution, was required to be submitted to the mayor for acceptance or rejection before final enactment. These questions are considered in the opinion of the Appellate Division of the first department in the decision from which the appeal is taken. We concur in the conclusions reached, and can add but little to the very cogent and satisfactory opinion of Judge Patterson in the case. We shall, however, in view of the great public interest in the subject, make some observations upon the several questions in the order in which they have been stated.

*First.* Art. III, sec. 20, of the Constitution prescribes : " The assent of two-thirds of the members elected to each branch of the legislature shall be requisite to every bill appropriating the public moneys · or property for local or private purposes." It is insisted that section 13 of the act of 1896, which provides that one-third of the revenues derived under the act, less the amount allowed for collecting the same, shall be paid to the treasurer of the state to the credit of the general fund as a part of the general tax revenue of the state, and that the "remaining two-thirds thereof, less the amount allowed for collecting the same, shall belong to the town or city in which the traffic was carried on from which the reve- nues were received, and shall be paid by the county treasurer of such county and by the special deputy commissioners to the supervisor of such town or to the treasurer or fiscal offi- cer of such city ; and such revenues shall be appropriated and · expended by such town or city in such manner as is now or may hereafter be provided by law for the appropriation and expenditure of sums received for excise licenses, or in such other manner as may hereafter be provided by law," is in con- travention of this section of the Constitution as respects the disposition made by the act of two-thirds of the revenue to

town and city purposes. This latter clause, it is insisted, is an appropriation of public money to local purposes within this section of the Constitution, and it being conceded that the act did not receive a two-thirds vote of the members of the legislature, if the claim is well founded, the 13th section of the act, so far as relates to two-thirds of the revenues, is unconstitutional and void.

The appropriation of this part of the excise tax revenues is without doubt for a local purpose within art. III, section 20 of the Constitution. The fact that the purpose for which an appropriation is made is public does not withdraw it from the inhibition of the section if the purpose is also local. An act may be local although public. (CHURCH, Ch. J., *Kerrigan* v. *Force*, 68 N. Y. 381; *People* v. *Allen*, 42 id. 378.) The crucial question, therefore, is whether the act of 1896 is, within the section, an appropriation of public moneys. This provision of the present Constitution was in the Constitution of 1821, and has ever since formed a part of the organic law of the state. Section 13 of the act of 1896, after fixing the rule of distribution of the excise taxes as between the state and the cities and towns, prescribes that the revenues received by the cities and towns shall be appropriated and expended for the purposes to which the excise moneys are applied under existing laws. The Excise Law of 1892, which was in force up to the passage of the act of 1896, under which all excise moneys were paid over to the several towns or cities in which licenses were granted and in which the license moneys were received, declared in substance that the moneys should be applied towards defraying the expenses of local government therein. (Laws of 1892, ch. 401, § 15.) Under the act of 1896, which in effect incorporates into the 13th section this provision of the act of 1892, the same application is to be made of the excise taxes received by the cities and towns, as was prescribed by the act of 1892 in respect to license fees collected under that act.

Upon the point whether two-thirds of the traffic taxes imposed by the act of 1896 and which the 13th section

374     People ex rel. Einsfeld *v.* Murray.     [May,

Opinion of the Court, per Andrews, Ch. J.     [Vol. 149.

declares shall belong to the town or city where the traffic is carried on, are public moneys within art. III, sec. 20 of the Constitution, it is important to notice that although this section has been since 1821 a part of the Constitution of the state, excise moneys collected during that whole period have been appropriated under a general law of the state exclusively to the localities where the licenses were granted to be applied to diminish local taxation or to some purpose of local charity. Indeed, this has been the uniform policy of the state in respect of the disposition of excise moneys derived from the traffic in liquors from the foundation of the state government. By the earliest excise law of the state (Chap. 17 of the Laws of 1779) the excise commissioners were directed to pay the excise moneys collected in each county to the county treasurer, to be applied towards defraying the contingent expenses of the county. The system of appointing commissioners of excise has not been uniform. Under the Colonial Act (Chap. 54 of the Laws of 1775) they were designated by name in each of the localities. The act of 1779 designated certain officials to act as commissioners. Since that time county boards of excise have been created, as under the act of 1857, and subsequently town and city boards were substituted. Under the county system the excise moneys were paid to the counties, and under the system of town and city boards to the towns and cities in which the licenses were issued. But notwithstanding many changes from time to time have been made in the details of the excise system, there has, for a century of the state government and up to the act of 1896, been one uniform policy recognized by the legislature, namely : that moneys received for licenses for the liquor traffic should be paid over to the localities of the state in which the licenses were granted, to be applied to some object of local government or interest.

Under the former license laws large sums have been collected annually in cities, villages and towns. In a strict and accurate sense they were public moneys. No exaction can be

lawfully made of a citizen by way of tax, impost or excise, except under the authority of the legislature, and the product of such imposition is public money. But there is a well-settled distinction between the money of the state and money levied under corporate powers conferred upon cities, villages and towns for local and corporate purposes. In the latter case the money levied and collected is not the money of the state. It is the money of the town, city or village in which under the exercise of corporate powers it was levied and collected, and to it the state has no title. (*People* v. *Ingersoll*, 58 N. Y. 1; *Shepherd's Fold* v. *Mayor, etc.*, 96 id. 138.) In every city or village charter the power of local taxation for municipal purposes is conferred with authority to appropriate the money raised to purposes of local government. This, in a general sense, is an appropriation of public moneys to local purposes, but it has never been supposed that it was an appropriation within the meaning of art. III, sec. 20 of the Constitution, so as to require a two-thirds vote to pass a bill granting a city or village charter.

The former excise laws stood upon a different basis from the charter laws of cities and villages. They were general laws applicable to the whole state, establishing a system for the regulation of the traffic in liquors, varying in some respects in their application in cities and towns. The system was administered through boards of excise, sometimes, as we have seen, appointed directly by the legislature, but generally elected in towns, with jurisdiction to grant licenses in the town for which they were elected, and in cities, appointed by local authorities. The excise commissioners, although locally elected or appointed, were state agencies for administering the excise system, and, like assessors, collectors and highway commissioners, were independent public officers, exercising public powers, and charged with public duties specially prescribed by law. (*Lorillard* v. *Town of Monroe*, 11 N. Y. 392; *People ex rel. Van Keuren* v. *Bd. of Town Auditors*, 74 id. 310.) In granting licenses they were not exercising a jurisdiction as agents of the corporation within which they acted, for the granting of licenses for the traffic in liquor was not a power

vested in towns, villages or cities. They exercised their functions under the authority of the state, which prescribed their powers and duties, and the mode of their appointment was a convenient method for designating the agencies through which the system should be administered.

We assent to the claim of the counsel for the appellant that the towns, cities and villages never acquired any irrevocable right to receive the license fees collected. We do not doubt that it would have been competent for the legislature from the first to have required all license fees to be paid into the state treasury for general state purposes, or at any time to have changed the practice which was adopted. The reason for the legislative policy which has hitherto uniformly prevailed, to permit license fees to be applied to the uses of the locality where the traffic was licensed and carried on, is obvious, namely : to furnish some measure of indemnity against the public burdens thrown upon localities by the prosecution of a business therein under state authority, powerfully contributing to disorder, pauperism and crime. Seventy-five years have elapsed since the constitutional provision now in question first became part of the organic law, and during that long period this practice, under statutes which concededly were enacted without a two-thirds vote, has prevailed, and has never hitherto been challenged as a violation of the Constitution. Those statutes as distinctly appropriated public moneys to local purposes as does the statute of 1896, and were even more subject to the constitutional criticism made to the act of 1896, since they appropriated to the use of the cities and towns not a part only, but the whole of the excise moneys collected. This legislative policy which has prevailed for so long a period, sanctioned by numerous statutes, never questioned in the courts and acquiesced in by all departments of the state government, is a practical construction of the constitutional provision now in question, that an appropriation of excise moneys to the use of towns and cities under acts passed by a majority vote, is not an infraction of the Constitution, and this construction ought not now to be disturbed.

We also assent to the proposition that the provisions of the former excise laws under which excise moneys were paid over to localities, constituted appropriations of public moneys. But the public moneys referred to in art. III, sec. 20, of the Constitution, are the public moneys of the state as contradistinguished from public revenues levied for local purposes by towns, cities and villages under state authority, or moneys which by a long course of legislation, as in the case of excise moneys, have been treated as standing in the same situation.

The act of 1896, also, we think, appropriates to the towns and cities the two-thirds of the excise taxes which may be collected under the act. But it is an appropriation which operates on the fund at the very moment of its collection. The two-thirds so appropriated never reaches the treasury of the state and never bears the impress ·of state money. The statute declares in express terms that two-thirds of the fund collected "shall belong to the town or city in which the traffic was carried on, from which the revenues were received." It was competent for the legislature so to declare by a majority bill, unless there is a distinction between excise money under former statutes and excise taxes under the act of 1896, which would justify such an appropriation in the one case, but not in the other. We think no such distinction exists. The claim that the act of 1896 is a tax law, having for its primary purpose the raising of revenue for the support of government, involves the theory that the legislature in enacting it intended to depart from the principle upon which all excise laws have hitherto been founded. That principle has been by exaction and restriction to limit a dangerous traffic in the interests of social order and the public welfare. It is probably competent for the legislature to tax occupations or business as a source of revenue, and it could tax the liquor traffic for this purpose. The selection of the subjects of taxation rests with the legislature, and the imposition of a license fee for revenue on a business or occupation is an exercise of the power of taxation. (*The License Tax Cases*, 5 Wall. 462; Cooley Const. Lim. 201.) But an· exaction imposed as a condition of the right to

48

378        People ex rel. Einsfeld v. Murray.        [May,

Opinion of the Court, per Andrews, Ch. J.        [Vol. 149.

carry on a business dangerous to public morals or which may involve public burdens, by way of discouragement or regulation, is not in any proper sense a tax.. It does not proceed upon the principle upon which taxes are levied, and upon which taxation is justified, viz., the protection afforded by the government to the taxpayer. The imposition is made in such cases generally for a double purpose, to discourage the business and to secure indemnity in part to the public from the losses and burdens which the business is likely to entail. The so-called excise tax is for the protection of the community and not for the protection of the person from whom it is exacted. It is said by Judge Cooley, in his work on "Taxation" (p. 397), that "custom has much to do in determining whether certain classes of exactions are to be regarded as taxes or as duties imposed for regulation." There can be no doubt that a large revenue will result from excise taxes imposed by the act of 1896, nor that this was contemplated by the legislature. But this will be a consequence of the system, and was not the motive of its adoption. It was manifestly not the intention of the legislature to encourage the traffic, but to control, restrict and regulate it, and by the local option provision it is rendered possible that it may be wholly prohibited in every town of the state, a provision quite inconsistent with a purpose to encourage the traffic or to make it an ordinary source of revenue. The fact that the exaction is in the act denominated a tax is not conclusive. All exactions imposed upon citizens by public authority are in a general sense taxes whether imposed for regulation or revenue. The character of the act of 1896, whether a tax law in a proper sense, or a law enacted under the police power, must be determined from its whole scope and tenor, and there can be no reasonable doubt we think that it is of the latter character. It is radically different in some respects from the excise laws which it supersedes. But the changes are in the administration of the excise system and not in its essential character. The most noticeable changes are: (1) State supervision in place of supervision through boards of excise, and (2) the opening of the traffic to all citizens (with certain

exceptions) who shall pay the license tax, and give the bond required. The payment of the tax and the giving of the bond are conditions precedent to the right to engage in the business, and the imposition of conditions precedent is the distinguishing test of a license law. (See COOLEY, J., *Young-blood* v. *Sexton,* 32 Mich. 406; MARSHALL, J., *Adler* v. *Whitbeck,* 44 Oh. St. 539.) The analogy between the law of 1896 and the former excise laws is strongly marked. There is the same necessity of a public certification of a right to engage in the traffic; the same restrictions and regulations intended to guard the traffic and reasonably protect the public against its acknowledged evils; the same principle of local option, and the act incorporates the principle of the Civil Damage Law. The new features of the system may prove to be efficient means of repression and regulation; such as the change in the administrative agencies, and the much larger tax upon the right to engage in the traffic.

We do not deem it important to consider how far the legislature may go in alienating the public revenues, derived from the exercise of the ordinary power of taxation to local or private purposes, or in barring itself from a resort to the usual sources of taxation. Clearly it cannot appropriate the public moneys of the state for a local though public purpose, except by a two-thirds bill, and this whether the money is actually in the treasury of the state or in process of collection. But the legislative declaration in the act of 1896, that two-thirds of the excise taxes shall belong to the towns and cities, is in accordance with an uninterrupted legislative understanding that the legislature may devote excise moneys to the uses of the towns and cities in which they are collected, by majority bill, and it is now too late to question this construction of the Constitution.

*Second.* We perceive no force in the objection based upon the departure in the act of 1896 from the classification of cities made by art. XII, sec. 2, of the Constitution. The section is new and its manifest purpose is to give some measure of protection to cities against the evils of special city legis-

lation. It divides the cities of the state into three classes according to population, the first class embracing cities having a population of 250,000 or more ; the second, those having a population of 50,000 and less than 250,000, and the third, all other cities. The section then proceeds : " Laws relating to the property, affairs or government of cities and the several departments thereof are divided into general and special city laws ; general city laws are those which relate to all the cities of one or more classes ; special city laws are those which relate to a single city or to less than all the cities of a class." Then follow provisions for the transmission of a copy of every special city law after it has passed both branches of the legislature, to the mayor of the city for approval or rejection, before its final enactment and for subsequent action by the legislature in case of disapproval. The law of 1896 in fixing the excise taxes graduates them in cities according to population, but does not follow the classification in this section of the Constitution. More is exacted in New York than in Brooklyn or Buffalo, and more in Brooklyn than in Buffalo, although these cities are cities of the first class in the classification in art. XII, sec. 2.

The conclusive answer to the constitutional objection based on this section is, that the act of 1896 is neither a general nor special city law, nor does it relate to the " property, affairs or government" of cities. It is a general state excise law, with such special provisions and adaptations to localities as to the legislature seemed proper. Whether the law should be uniform in its application to the cities of the state, or whether a discrimination should be made in the excise tax as between New York and any other city, and the extent of the discrimination, was in the discretion of the legislature. In enacting a general law under the police power, the legislature is not hampered or restrained by the classification of cities in the Constitution. It may adjust details to meet varying conditions. In a health law, regulations which might be suitable and proper for the city of New York, a great seaport, exposed to peculiar dangers from infection and disease, might be

unnecessary, burdensome and oppressive if applied to an inland city like Buffalo. The constitutional limitation relates to city laws, either general or special, and not to general laws for the government of the state, including the cities therein. Nor is the law of 1896 a law relating to the " property, affairs or government of cities." The granting of licenses for the liquor traffic has never been a corporate function or duty of a city, as such. It is a function which the state in its aggregate capacity has administered. It has made use of local machinery as has been shown, and it has permitted the cities to use excise moneys for local purposes. But excise laws do not relate to the affairs of cities, and still less, to their property or government within the section of the Constitution now considered. Cities are affected by the act of 1896, as are all other localities in the state. But this is because in the framing of general laws, all places are alike subject to the legislative power. The act in question is not special legislation under the disguise of a general law. It will be the duty and we have no doubt the pleasure of the court, on a proper occasion, to give full effect to this new provision of the Constitution, and to construe it with that liberal spirit which is especially required in the interpretation of a remedial provision of the fundamental law, so that, if possible, it shall be efficient to secure the purpose of its enactment.

*Third.* The objection that the law of 1896 was a special city law, which, under art. XII, sec. 2, of the Constitution, ought to have been referred to the mayors of the cities affected, has been answered in the consideration of the other objection based on this section. It was not a special city law. It did not relate to the " property, affairs or government " of any city within the meaning of the section referred to.

We find no ground for questioning the constitutionality of the act of 1896, and we, therefore, affirm the judgment below.

All concur.

Judgment affirmed.