(110 App. Div. 279)

### PEOPLE ex rel. LOUGHRAN v. FLYNN, Warden.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

1. INTOXICATING LIQUORS—LIQUOR TAX CERTIFICATE—PROPERTY.

Where a person paid to the state the liquor tax imposed by Laws 1896, p. 45, c. 112, and received a liquor tax certificate which under such act he was authorized to surrender at any time during the year for which it was issued and receive a proportionate amount of the tax paid, in case he had obeyed the law, and was also authorized to assign such certificate, which could not be canceled, except by judicial proceedings provided for, the certificate conferred property rights of which the holder could not be deprived without due process of law.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 780.]

2. CONSTITUTIONAL LAW—LIQUOR TAX CERTIFICATE—DEPRIVATION OF PROPERTY—DUE PROCESS OF LAW.

Laws 1905, p. 1862, c. 697, in so far as it authorizes special deputy commissioners of excise to revoke a liquor tax certificate, issued to a person prior to the enactment of such act, for the purpose of carrying on traffic in liquor in connection with the business of a hotel, on the ex parte finding of the superintendent or executive officer of the building department of a city, that the hotel did not comply with the laws of the state and locality relating to hotels, etc., without giving the holder of the certificate an opportunity to be heard and contest the facts on which such finding was based, is unconstitutional, as a deprivation of the certificate holder's property without due process of law.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 780.]

Clarke and Laughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Habeas corpus by the people, on relation of Patrick Loughran, against William Flynn, as warden of the city prison, etc. From an order denying relator's discharge 96 N. Y. Supp. 653), he appeals. Reversed.

Argued before O'BRIEN, P. J., and PATTERSON, CLARKE, INGRAHAM, and LAUGHLIN, JJ.

D. Cady Herrick, for appellant.

Edward Sandford, Asst. Dist. Atty., for respondent.

Julius M. Mayer, Atty. Gen., for state commissioner of excise.

INGRAHAM, J. The question presented upon this appeal is whether the provisions of chapter 697, p. 1862, of the Laws of 1905, so far as they direct the special deputy commissioner of excise to revoke a liquor tax certificate issued to a person intending to carry on the traffic in liquor in connection with the business of a hotel, without notice to the holder of the liquor tax certificate or giving him an opportunity to be heard, violates any provision of the Constitution of this state. Prior to the 1st day of June, 1905, the relator duly paid the tax, and applied for and received a liquor tax certificate to traffic in liquor in connection with the business of keeping a hotel at No. 2353 Third avenue, city of New York, pursuant to chapter 112, p. 45, of the Laws of 1896, and the various acts amendatory thereto. By the liquor tax law (chapter 112, p. 45, Laws 1896), there was substituted for a license to traffic in liquor under the provisions of law which had been in effect prior to that time a system of taxation by which a tax was imposed upon each citzen of this state intending to engage in the liquor business. Subdivision 1 of section 11 of the act provides:

"Upon the business of trafficking in liquor to be drunk upon the premises where sold, or which are so drunk, whether in a hotel, restaurant, saloon, store, shop, booth or other place, or in any out building, yard or garden appertaining thereto or connected therewith, there is assessed an excise tax to be paid by every corporation, association, copartnership or person engaged in such traffic."

By section 17 provision is made for the application to be made by each person desiring to engage in such traffic for a liquor tax certificate. This application must state the name of the applicant, the premises where the traffic is to be carried on; under what subdivision of section 11 of the act the traffic in liquor is to be carried on, and what if any other business is to be carried on or in connection therewith or on the same premises by the applicant. Subdivision 9 of section 17 provides that if the traffic in liquor is to be carried on in connection with the business of keeping a hotel, the applicant shall also show by his application that all the requirements of section 31 of the act in relation to hotels have been complied with. Section 18 requires the applicant to give a bond, and section 19 provides:

"When the provisions of sections seventeen and eighteen of this act have been complied with and the application provided for in section seventeen is found to be in correct form, and does not show on the face thereof that the applicant is prohibited .from trafficking in liquor under the subdivision of section eleven under which he applies, nor at the place where the traffic is to be carried on, and the bond required by section eighteen is found to be correct as to its form and the sureties thereon are approved as sufficient by the county treasurer, or if in a county containing a city of the first class by the special deputy commissioner for such county * * * shall at once prepare and issue to the corporation, association, copartnership or person making such application and filing such bond and paying such tax, a liquor tax certificate in the form provided for in this act."

Section 25 provided that:

"If a person holding a liquor tax certificate and authorized to sell liquors under the provisions of this act, against whom no complaint, prosecution or action is pending on account of any violation thereof, and who shall not have violated any provision of the liquor tax law during the excise year for which such certificate was issued, shall voluntarily, and before arrest or indictment for

violation of the liquor tax law, cease to traffic in liquors during the term for which the tax is paid under such certificate, such person or his duly authorized attorney may surrender such tax certificate to the officer who issued the same or to his successor in office provided that such tax certificate shall have at least one month to run at the time of such surrender. * * * Said officer shall thereupon compute the amount or rebate then due on said certificate for the unexpired term thereof, and shall execute duplicate receipts therefor. * * * One of such receipts said officer shall deliver to the person entitled thereto, and the other of such receipts he shall immediately transmit, with the surendered certificate and the petition for the cancellation threof to the state commissioner of excise. If within thirty days from the date of the receipt of such certificate by the state commissioner of excise, the person surrendering such certificate shall be arrested or indicted for a violation of the liquor tax law, or proceedings shall be instituted for the cancellation of such certificate, or an action shall be commenced against him for penalties, such petition shall not be granted until the final determination of such proceedings or action; and if the said petitioner be convicted, or said action or proceeding be determined against him, said certificate shall be cancelled and all rebate thereon shall be forfeited, but if such petitioner be acquitted, and such proceeding or action against him be dismissed on the merits the state commissioner of excise shall prepare two orders for the payment of such rebate, one order for the one half thereof, directed to the state treasurer, to be paid by him, on the certificate of the comptroller, and one order for one half of such rebate, directed to the fiscal officer of the proper locality, to be paid by such fiscal officer out of any excise or other moneys of such locality applicable thereto. * * * If a corporation, association or copartnership holding a liquor tax certificate shall be dissolved, or a receiver or assignee be appointed therefor, or a receiver, assignee or committee of the property of a person holding a liquor tax certificate be appointed during the time for which such certificate was granted, or a person holding a liquor tax certificate shall die during the term for which such tax certificate was given, such corporation, association, copartnership or receiver or assignee, or the administrator or executor of the estate of such person, or the person or persons who may succeed in such business, or a committee of the property of a person adjudged to be incompetent, may in like manner surrender such liquor tax certificate; or they may continue to carry on such business, upon such premises, for the balance of the term for which such tax was paid and the certificate given."

Section 27 provides that a liquor tax certificate may be sold, assigned or transferred during the time for which it was granted to any corporation, association, copartnership or person not forbidden to traffic in liquors under this act, upon the consent of the officer who issued the license or his successor in office; provided, however, that no such sale, assignment or transfer shall be made except in accordance with the provisions of the liquor tax law. Section 28 provides for a review by certiorari of the refusal to issue or transfer a liquor tax certificate. Subdivision 2 of that section provides:

"At any time after a liquor tax certificate has been issued to any corporation, association, copartnership or person under section 11 of this act, said liquor tax certificate may be revoked and cancelled if material statements in the application of the holder of such certificate were false, or if the consents required by section 17 are not properly filed as required by said section, or if the holder of said certificate was not for any reason entitled to receive or hold the same, or to traffic in liquors, or if any provision of this act is violated at the place designated in said certificate as the place where such traffic is to be carried on."

Provision is then made for a judicial determination by a justice of the Supreme Court or the Special Term of the Supreme Court, based upon a petition stating the facts upon which the cancellation is claim-

ed and requiring the issue of an order requiring the holder of such certificate to show cause before a justice of the Supreme Court or at a Special Term of the Supreme Court on a day specified why an order revoking and canceling such liquor tax certificate should not be granted. A copy of such petition and order is required to be served upon the holder of such certificate, and upon the officer issuing the certificate or his successor in office, in the manner directed by such order, not less than five days before the return day thereof. On the day specified in such order, the justice, judge, or court before whom the same is returnable shall grant such order revoking and canceling the said liquor tax certificate, unless the holder of said liquor tax certificate shall present and file an answer to said petition denying each and every violation of the liquor tax law alleged in the petition, and raising an issue as to any of the facts material to the granting of such order, in which event the said justice, judge, or court shall hear the proofs of the parties in relation to the allegations of the petition or answer. If the evidence establishes any of the facts hereinbefore set forth as sufficient to revoke and cancel a certificate, an order shall be granted by said justice, judge, or court revoking and canceling such certificate. Said order shall also provide that the holder of said liquor tax certificate, or any other person having such certificate in his possession or under his control, shall forthwith surrender said certificate to the officer who issued the same or to his successor in office.

Section 30 specified the persons to whom liquor shall not be sold or given away, and what are illegal sales and selling. Subdivision "k" of section 31 provides that the holder of a liquor tax certificate under subdivision 1 of section 11 of the act, who is the keeper of a hotel, may sell liquor to the guests of such hotel, except to such persons who are described in clauses 1, 2, 3, 4, 5, and 6 of section 30 of the act, with their meals, or in their rooms therein, except within the hours of 1 o'clock and 5 o'clock in the morning. The section then defines the term hotel, and who are guests within the meaning of this section.

Section 33 provides that any person engaged in the traffic of liquors, whether as officer of a corporation or association, or as a member of a copartnership or an individual, shall, upon conviction of a violation of any of the provisions of this act, be liable for and suffer the penalties imposed therein.

Section 34 specifies the penalties for the violation of this act. Subdivision 2 of section 34 provides that any corporation, association, copartnership or person, who shall make any false statement in the application required to be presented to the county treasurer or other officer to obtain a liquor tax certificate, or to obtain a transfer thereof, or who shall violate any of the provisions of sections 11, 21, 22, 23, 24, 30, or 31, shall be guilty of a misdemeanor and shall forfeit the liquor tax certificate, and be deprived of all rights and privileges thereunder, and to any right to a rebate of any portion of the tax paid thereon, and such certificates shall be surrendered to the officer who issues them, or to his successor in office, who shall immediately forward the same to the state commissioner of excise for cancellation.

Section 42 provides for the collection of penalties to be recovered from any corporation, association, copartnership or persons who shall

traffic in liquor contrary to the provisions of the liquor tax law, or who shall make a false statement upon application for a liquor tax certificate, to be recovered by the state commissioner of excise in an action brought in his name as such commissioner.

This analysis of the act shows that a person receiving a liquor tax certificate based upon the payment of the amount assessed as a tax acquires certain vested rights. He has paid to the state a sum of money as a condition that he may conduct a business, which by the imposition of a tax becomes a legal business, for one year from the 1st of May, in which the tax was paid. In consideration of the payment of this sum of money, the state issues to him a liquor tax certificate, and by an express provision of subdivision "k" of section 31 the holder of a liquor tax certificate who is a keeper of a hotel is authorized to sell liquors to the guests of the said hotel. By the express provision of the act there was reserved to the holder of the liquor tax certificate the right to have the same canceled at any time during the year, and if he has not been arrested for a violation of the liquor tax law, and no proceeding based upon such a violation is pending against him, he becomes entitled to receive from the state and local authorites a proportionate amount of the money that he has paid to the state for the permission to carry on the business during the year. He is authorized to assign the right to transact the business, for which he had paid. The state does not reserve the right to cancel the certificate or interfere with the person who had paid the tax during the period for which the tax had been paid, except upon conviction of the holder of the certificate in a judicial proceeding to which he must be a party; and an order revoking the certificate can only be made upon proof in a proceeding to which the holder of the certificate is a party, where the evidence establishes that the holder had been guilty of an act which the statute provides shall be a cause for the cancellation of the certificate. It was under this law that the relator prior to June 1, 1905, paid to the state the sum of $1,200. He had the right on July 1st, if no proceedings were pending against him based upon a violation of the law, to present his certificate for cancellation, and if that were done he was entitled to receive back eleven-twelfths of the sum which he had paid. He paid the money to the state upon the express provision giving him that right, and the state could revoke the certificate only after a judicial proceeding in the Supreme Court, based upon proof that the holder had violated some provisions of the act.

On June 3, 1905, chapter 697, p. 1862, of the Laws of that year was passed. Section 1 of that act provides that during the year 1905, a special deputy commissioner of excise or county treasurer empowered to issue a liquor tax certificate, under subdivision 1 of section 11, of the liquor tax law, who has issued a liquor tax certificate upon a statement by which it appears that the business of keeping a hotel is to be carried on in connection with the traffic in liquors on the premises for which such certificate is applied for, shall at any time after the issuance of such certificate at the request of a taxpayer, serve or cause to be served upon the superintendent or executive officer of the building department of the city, in which such declared hotel building is situated, a notice stating that an application has been made to carry on the busi-

ness of trafficking in liquor in connection with the business of keeping a hotel. Within 30 days after the receipt of such notice, the officer receiving the same is required to cause an inspection of the building and premises of such declared hotel, and to file with the special deputy commissioner a written report stating whether or not such building and premises complied with the provisions of the laws, ordinances, rules and regulations of the state and locality relating to hotels, and also with the provisions of subdivisions 1 and 2 of section 31 of the liquor tax law. Section 2 provides that if it shall appear from such report that the declared hotel building referred to in the application does not comply with the provisions of the liquor tax law as to hotels, or the laws or ordinances relating to the fireproof construction of hotels, the said special deputy commissioner of excise shall revoke any liquor tax certificate issued to any person proposing to carry on the traffic in liquor at such place in connection with the business of keeping a hotel, and the said deputy commissioner of excise shall immediately notify such chief executive officer of the building department that such liquor tax certificate has been revoked. Every superintendent or other officer of the building department, upon receiving such notice, shall at once notify the owner and occupant of said building that the building does not comply with the laws, ordinances, and regulations in relation to hotels, and shall cause the use of such building as a hotel to cease within 10 days after the notification and shall cause all partitions forming bedrooms and which were formerly used in connection with a hotel or saloon in such building to be removed within 30 days. No notice is to be given to the owner of the tax certificate until after it is revoked, and he has no opportunity of knowing that a proceeding is commenced against him until he receives the notice that his liquor tax certificate has been canceled and revoked. He has no opportunity, either before or after the revocation, to dispute the fact certified by the superintendent of buildings, no opportunity to be heard whether his case comes within the act; but without notice to him and without a judgment of any court or tribunal, the right acquired by him on the payment of the tax, including the right to surrender the certificate and receive back a proportion of the money paid for the right to carry on the business is revoked, and the superintendent of buildings is directed to enter his premises and to remove therefrom all partitions forming bedrooms which were formerly used in connection with the hotel or saloon in such building.

The holder of this certificate has had no notice of any proceeding against him. No court has decided that he has violated this act or been guilty of any offense. The state has $1,200 of his money paid under a statute which in express terms authorized him, in consideration of that payment, to sell liquor to guests in his hotel for one year from May 1, 1905, reserving to him the right to surrender the certificate and receive back a proportion of the money paid if he should discontinue that business, and which in substance provided that the certificate could not be revoked except by an order of the Supreme Court or a justice thereof upon notice to him based upon proof of a violation by him of the provisions of the act. In this proceeding, because the relator refused to recognize such revocation, he is held for the commission of a crime.

It is claimed that this certificate is void if the applicant had been guilty of any misstatement in his application. Assuming that to be true, before the fact could be determined against him and his property right destroyed, he was entitled to notice of the charge made against him and an opportunity to contest the accusation of there having been a misstatement in his application. If the protection afforded by the Constitution means anything, it means that a person is entitled to his day in court and to contest the charge against him and to be heard thereon, before his property can be taken from him and his rights destroyed.

That the holder of a liquor tax certificate acquires upon the payment of the tax a right which the court will protect has been expressly decided by the Court of Appeals in Matter of Lyman, 160 N. Y. 96, 54 N. E. 577. The court, in affirming an order dismissing a proceeding to revoke a certificate, said:

"The company paid the tax on procuring the certificate, but the commissioner claims that this certificate thus procured had been forfeited because sales of beer were made upon the grounds by the holder at another place than that described therein. * * * Liquor tax certificates, or the right to engage in the sale of liquors, constitute under the present law, a species of property transferable by the party procuring the sale. The privilege or right which it confers upon the holder cannot be revoked except in the manner and for the causes prescribed in the statute. The holder may invoke the general rules of law for the protection of property in any proceeding having for its object the forfeiture or destruction of the right which the certificate confers."

Peck v. Gargill, 167 N. Y. 391, 60 N. E. 775, 53 L. R. A. 888, was an appeal from an order revoking and canceling a liquor tax certificate. In that case Judge O'Brien, in delivering the opinion of the court, says:

"These certificates are recognized by the statute under which they are issued as a species of property transferable from one to another. They are the evidence of a right or privilege to carry on a certain kind of business, issued by the state to the individual; and hence a thing of pecuniary value. In this case, the holder of the certificate has been deprived of it by the order appealed from, which revoked and canceled it. This has been done on the ground that he has been guilty of a violation of the law by selling liquor on Sunday. The order so adjudges. No one has testified, or even alleged, that he committed that offense. The petitioner does allege that he is informed and believes that the holder of the certificate has been selling beer, whisky and wine during the last three months, on Sunday, and that is absolutely the only allegation of proof in the record to uphold the order complained of. * * * When the law required that the facts shall be stated, as the basis of a summary proceeding to forfeit the right to carry on business by reason of acts which constitute a crime, it is not complied with by the presentation of a petition, every allegation of which is upon information and belief, without even a statement of the sources of the information or the grounds of the belief. The liberty and property or personal rights of the citizen have practically no protection if they can be taken away or destroyed by such a proceeding on the part of any one who is willing to become a party to such a controversy, and without producing any proof whatever of the acts constituting the offense charged."

All of this opinion was not concurred in by a majority of the judges, but there was no dissent from this proposition. And Martin, J., in concurring, says:

"While it has been said that a tax certificate possesses some of the elements of property, and to an extent may be so regarded, still it is at most a qualified property, subject to all the provisions of the statute and may be canceled or

destroyed in the manner specified. In other words, the right of property is a conditional one, which is subject to all the contingencies provided for by the statute, among which is the liability of being canceled and annulled for one of the reasons specified in the statute."

In Niles v. Mathusa, 162 N. Y. 546, 57 N. E. 184, the right acquired under such liquor tax certificate was before the court, the question being, whether the holder of such certificate could mortgage it to secure the payment of a sum of money, and in determining that question the court said:

"The certificate differs essentially from the licenses issued under former excise laws; it may be surrendered and the unearned portion of the tax is returned; it can be assigned, subject to the limitations of statute, and if the holder dies it is an asset in the hands of his executor or administrator who may collect the rebate. The certificate is undoubtedly personal property under accepted definitions, but it remains to be considered whether it is in legal contemplation a chattel."

And as a conclusion the court says:

"The liquor tax certificate is personal property, but it is not a chattel within the purview of the chattel mortgage act."

It must, I think, be conceded that the person who paid to the state the tax imposed by this act and received a liquor tax certificate thereby acquired a property right to protect which he was entitled to appeal to the courts. This property right, of course, was subject to the conditions imposed by the statute, and it was subject to be rendered valueless by the procedure provided in the statute for its revocation. But, under the statute, when the plaintiff's certificate was issued, it could only be revoked or canceled by a judicial determination in a proceeding to which the holder of the certificate was a party, and in which he had an opportunity of being heard. For the Legislature, to deprive the holder of the certificate of his property right, without judicial proceeding, and without the opportunity of being heard, seems to me to be a plain violation of the constitutional provision that no person shall be deprived of life, liberty, or property without due process of law. Once establish the fact that the owner of such certificate acquires by it a property right, whatever it may be called, he can only be deprived of that property right by due process of law; and any attempt of the Legislature to divest him of it without notice, and without an opportunity of contesting the alleged facts upon which it is sought so to divest him, is depriving him of property without due process of law. "No citizen shall arbitrarily be deprived of his life, liberty, or property. This the Legislature cannot do nor authorize to be done. * * * It may, however, be stated generally that due process of law requires an orderly proceeding adapted to the nature of the case, in which the citizen has an opportunity to be heard and to defend, enforce and protect his rights. A hearing or an opportunity to be heard is absolutely essential. We cannot conceive of due process of law without this." Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289.

In other cases where the question has been presented, it has been held that an act which in effect destroys property or a property right without an opportunity to its owner of being heard, is depriving a person of his property without due process of law. Matter of Jacobs,

98 N. Y. 98, 50 Am. Rep. 636; Gilman v. Tucker, 128 N. Y. 190, 28 N. E. 1040, 13 L. R. A. 304, 26 Am. St. Rep. 464; Colon v. Lisk, 153 N. Y. 188, 47 N. E. 302, 60 Am. St. Rep. 609. And the same principle has been reaffirmed in a late case in the Supreme Court of the United States; Muhlker v. New York & Harlem R. R. Co., 197 U. S. 544, 35 Sup. Ct. 522, 49 L. Ed. 872. There the court said:

"The command of the state, the duty of the railroad to obey, may encounter the inviolability of private property. And in performing the duties devolved upon it, a railroad may be required to exercise the right of eminent domain. We do not, therefore, solve the question in this case by reference to the power of the state, and the duty of the railroads; the rights of abutting property owners must be considered, and against their infringement plaintiff urges the contract clause of the Constitution of the United States and the fourteenth amendment. The latter is invoked because the act of 1892 does not provide for compensation to property owners, and the former on account of the conditions upon which the strip of land constituting the avenue was conveyed to the city."

And the court concluded that if it was the state, and not the railroads, which did the injury to plaintiff's property, that permission or command of the state can give no power to invade private rights, even for a public purpose without payment of compensation.

The state has received the relator's money, for which it authorized him to conduct a certain business within the state for one year, the right to be subject to revocation and cancellation as a result of a judicial proceeding to which the relator must be a party. That right is held to be a property right, and can only be revoked, canceled or destroyed by a judicial proceeding in conformity with the grant of the right; and for the state to attempt by a legislative enactment to revoke and cancel the right acquired by this certificate without notice to the holder is the taking of property without due process of law and, as I view it, in direct violation of the constitutional provisions guarantying the protection of the owners of property. We are only discussing an act that affects certificates issued before its passage, and this decision affects only that act.

It follows, therefore, that the order appealed from must be reversed, and relator discharged.

O'BRIEN, P. J., and PATTERSON, J., concur.

CLARKE, J. I dissent. It is and always has been the law of this state that the regulation of the traffic in liquors is part of the police power. In the exercise of that power the Legislature has provided that a license procured by false statements as to certain easily ascertainable physical facts shall be revoked by one state officer on an official report made after inspection by another public officer, of the nonexistence of those physical requirements in the building in which the liquor is to be sold. To hold that a license to sell liquor obtained by such a fraud so established may not be so revoked upon the ground that thereby a constitutional right is violated, does not seem to me to accord with the matured views of the courts of this state. There are expressions in some opinions which may be cited in support thereof. It seems to me they have been withdrawn or overruled. In People ex rel. Ochs v. Hil-

liard, 81 App. Div. 71, 80 N. Y. Supp. 792, affirmed 178 N. Y. 582, 70 N. E. 1106, no proceedings of any kind had been taken against the certificate holders, either criminally or civilly, nor had their license been taken away. The building for which it had been issued had burned down and the assignees of the certificate, who had advanced the money to pay the tax attempted to obtain the rebate from the state. Notwithstanding the fact that these innocent third parties, who had advanced their money on the strength of the provisions of law in regard to rebates, were ignorant of the false statements in the application upon which the certificate was granted, the court said:

"Any false statements in the application in that regard vitiated the certificate in their hands and in the hands of their assignee as well. Inasmuch as they were not eligible to traffic in the liquor business, the certificate issued to them on their false representation was void"—and their proceeding was dismissed.

In Lyman v. Schermerhorn, 167 N. Y. 115, 60 N. E. 325, it was said:

"The false statement upon which he procured it overreached the certificate itself, and at the election of the state rendered it void ab initio. \* \* \* When the state withdraws that approval and asserts that the certificate affords no protection to its holder, the bond which was given in consideration of such protection ceases to be supported by it."

The statute here in consideration is a method provided by which the state exercises its election to declare the certificate obtained by fraud to be void ab initio. It seems to me to be well within the police power, and, so far as it provides for the revocation of the certificate, valid. By chapter 578, p. 1242, of the Laws of 1866, licenses to sell liquor taken out under the provisions of the excise law of 1857 were revoked. The Court of Appeals, in Metropolitan Board of Excise v. Barrie, 34 N. Y. 657, said:

"It, in terms, it is true, revokes licenses granted under the act of 1857, but that is no encroachment upon any right secured to the citizen as inviolable by the fundamental law." The licenses "form a portion of the internal police system of the state; are issued in the exercise of its police powers, and are subject to the direction of the state government, which may modify, revoke or continue them, as it may deem fit."

And it held the act constitutional.

The present liquor tax law expressly terminated all outstanding licenses. In People ex rel. Einsfeld v. Murray, 149 N. Y. 367, 44 N. E. 146, 32 L. R. A. 344, the Court of Appeals held this to be constitutional as a law enacted under the police power.

In my opinion the order should be affirmed.

LAUGHLIN, J., concurs.