STATE EX REL. CITY OF SUPERIOR vs. DONALD, Secretary of State.

*May 27—June 13, 1916.*

*States: Appropriating state funds to local purposes: Constitutional law: Taxation: Uniformity: Railroad property: Classification: Tax derived from marine terminals: Distribution to municipalities.*

1. Ch. 407, Laws 1915 (secs. 51.08, 51.29, 51.30, Stats. 1915),—providing for a separate valuation of "any docks, piers, wharves or grain elevators used in transferring freight or passengers between cars and vessels" which have been included in the value of a railroad company's property as a whole, and that the taxes paid by the company which are derived from or apportionable to such separately valued property shall be distributed to the municipalities respectively in which such property is located,—is not void on the ground that it appropriates money of the state to local purposes, since, if the law is otherwise valid, the moneys are not state funds but belong to the municipalities, though collected by the state as a matter of convenience.

2. Said statute does not in any way violate sec. 1, art. VIII, Const., which requires the rule of taxation to be uniform.

3. Nor is it in any sense a law "for assessment or collection of taxes," within the meaning of sub. 6, sec. 31, art. IV, Const., since it does not become effective for any substantial purpose until after the assessment and collection of the tax are fully completed.

4. Even if sec. 5, art. VIII, Const., limits state taxation to a sum sufficient to defray the estimated expenses of the state for the year, the statute does not violate that section, since the tax in question is simply collected by the state as agent of the municipality.

5. So far as the rate of the tax is concerned there can be no classification of railroad property or subjection of one part to a different rate from that to which the remainder is subjected.

6. But municipalities in which marine terminals are located being burdened with responsibilities, duties, and financial obligations not shared by municipalities possessing only ordinary railroad property, it cannot be said that the classification made by ch. 407, Laws 1915, is arbitrary or invalid.

MANDAMUS to the Secretary of State.

For the petitioner there was a brief by *H. V. Gard* and *T. L. McIntosh*, and oral argument by *Mr. Gard*.

There was also a brief by *Crownhart & Wylie,* of counsel for *City of Superior* and City of Ashland, and *W. Stanley Smith,* city attorney of Ashland, and oral argument by *Mr. C. H. Crownhart* and *Mr. Smith.*

. For the City of Milwaukee, as *amicus curiæ,* the cause was submitted on the brief of *Clifton Williams,* city attorney, and *Garfield S. Canright,* assistant city attorney.

The *Attorney General* and *Winfield W. Gilman,* assistant attorney general, for the defendant.

WINSLOW, C. J.    This is an action of *mandamus* brought originally in this court to compel the secretary of state to audit certain claims made by the city of *Superior* under the provisions of ch. 407, Laws 1915 (secs. 51.08, 51.29, 51.30, Stats. 1915).    The defendant moves to quash the alternative writ.

The question presented is as to the constitutionality of the act named.    The act provides in substance that after valuing the property of a railroad company as a whole the state tax commission shall make a separate valuation of "any docks, piers, wharves or grain elevators used in transferring freight or passengers between cars and vessels" which have been included in the value of the railroad property as a whole, and that the taxes paid by the company which are derived from or apportionable to such separately valued property on the basis of the separate valuation aforesaid shall be distributed to the towns, villages, and cities respectively in which such property is located.

The city of *Superior* in this action is attempting to enforce this law and compel the auditing officer of the state to audit its claims for those sums received by the state resulting from the taxation of railroads terminating at *Superior* which are apportionable to the dock, elevator, and wharf property located in that city and constituting the means of transfer of freight and passengers from railroad to ship and *vice versa.*

These claims are resisted on the ground that the law is un-

constitutional and void for the following reasons: (1) it appropriates money of the state for a local purpose and not a state-wide public purpose; (2) it violates sec. 1 of art. VIII of the state constitution, requiring the rule of taxation to be uniform; (3) it violates sub. 6 of sec. 31 of art. IV of the constitution, prohibiting the enactment of special laws for the assessment and collection of taxes; (4) it violates sec. 5 of art. VIII of the constitution, providing for the levy of an annual state tax sufficient to defray the estimated expenses of the state for the year.    These contentions will be taken up in their order.

1. The first objection may be quickly disposed of by the self-evident proposition that if this legislation is otherwise valid, *i. e.* if there is no constitutional objection of any other nature which stands in the way, then these funds are not in any true sense state funds, but simply funds belonging to the city of *Superior* which have been collected by the state as a matter of convenience in the administration of the tax laws and are temporarily held by the state treasurer as custodian only for the city and are to be turned over to the owner upon proper demand.    We pass, therefore, to the consideration of the other objections.

2. It is quite impossible for us to perceive in what way it can be argued that this legislation violates the rule of uniformity in taxation of property.    This rule was placed in the constitution for the protection of the taxpayer so that there may be no discrimination in property taxation.    There is none here.    The law does not change in the least the taxpayer's burden.    He pays exactly the same tribute whether his whole tax contribution remains in the state treasury or whether part of it goes to the city treasury.    He has not been taxed at one rate on a part of his property and at a higher rate upon another part, as was the case prior to the passage of this law.    *Minneapolis, St. P. & S. S. M. R. Co. v. Douglas Co.* 159 Wis. 408, 150 N. W. 422.

3. It is equally difficult for us to see how this law can be in any sense called a law for the assessment or collection of a tax. It does not become effective for any substantial purpose until after the assessment and collection of the tax are fully completed. The processes of assessment and collection remain the same in operation and in effect as before.

4. The fourth contention is answered by the same considerations which apply to the first contention. If this fund in fact belongs to the city and is simply collected by the state for convenience as the agent of the city, then of course there is no violation of the constitutional command that a tax sufficient to defray the estimated expenses of the state for the year shall be annually levied, conceding that this provision limits state taxation to that sum.

The difficult and serious questions in the case are whether there can be legal classification between ordinary railroad property and terminal facilities of this nature as well as between municipalities containing such terminal facilities and those containing only railroad property.

So far as the rate of the tax is concerned it is settled that there can be no classification of railroad property or subjection of one part to a different rate from that to which the balance is subjected. *Minneapolis, St. P. & S. S. M. R. Co. v. Douglas Co., supra.* But, as we have seen, there is no attempt to make a difference in the tax rate here. All railroad property is taxed at the same rate. This does not settle the question, however, whether the amount derived by taxation from such terminal facilities can be legally separated and returned to the municipalities, respectively, where such facilities are located, while other municipalities are given no part of the proceeds of railroad taxation. Is not this arbitrary discrimination and not proper classification, or, in other words, does not this result in an inequality of burden between municipalities or taxing units of the state?

In sustaining the validity of the law applying the system of *ad valorem* taxation to railway property and placing the entire proceeds in the state treasury for state purposes (*Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 108 N. W. 557) it was held that the purpose of the law was to tax railway property on the same basis as other property throughout the state, and that the proceeds were to be regarded as, in effect, the result of all state and local taxation (except special assessments) and as taking the form of state funds by reason of a constructive accounting between the state and the localities. We are entirely satisfied with this construction and adhere strictly to it.   Time has demonstrated, however, that this constructive accounting does not accurately work out the result intended at terminal cities such as *Superior,* where there must be a vastly expensive and entirely different class of terminal from the ordinary land terminal of a railway company. The most striking illustration of this fact is furnished by the situation at the city of *Superior* itself, where it appears that the total assessed valuation in 1915 was $34,258,688, of which $7,717,604, or 22½ per cent., was railroad wharfage property of this class.

That the possession and maintenance of such property imposes upon the municipality in which it is located an enormous and peculiar burden, financially greater and essentially different in some of its characteristics from the municipal burdens borne by inland municipalities, seems very clear. The annual requirements for dredging, policing, and otherwise maintaining a great harbor so that the change from land to marine carriage can successfully go on, is an onerous burden, and it may, we think, be properly considered as so peculiar in its nature as to rightly suggest that the proceeds of taxation derived from these expensive joint agencies of land and water commerce should be returned to the municipality which is under this peculiar burden while reaping little of benefit from its possession of them unless it be accom-

plished in this way. The legislature evidently concluded that the constructive accounting supposed to have been reached by the *ad valorem* law failed at this point, and passed the present law for the purpose of more perfectly fitting the fact to the theory and working out the constructive accounting principle with greater accuracy.

In order to set the legislative act aside we must be certain that there is no legal ground for classification here and hence that it accomplishes actual discrimination between the taxing units of the state.

After mature deliberation we cannot say that we feel certain of this. The terminal property named is certainly unique in character, and may reasonably be said to stand in a class by itself. It partakes equally of the character of land and of water transportation. Probably it was not thought of as an integral part of railroad property when the *ad valorem* law was passed.

Every municipality in which such property exists is burdened with responsibilities, duties, and financial obligations not shared by other municipalities possessing only the ordinary railroad property. We would not intimate for a moment that any other class of railroad property possesses such peculiar characteristics as would justify the classification here applied to marine terminals, but as to such terminals and the municipalities in which they are located we are unable to say that the classification is invalid.

*By the Court.*—Let the peremptory writ of *mandamus* issue as prayed, without costs.