STATE EX REL. CITY OF ASHLAND, Respondent, vs. ASH-
LAND COUNTY, Appellant.

*March 10—April 5, 1921.*

*Taxation: Terminal properties of public utilities: Assessment:
Valuations not usable in county equalization.*

1. Under sub. (4), sec. 1211—8, Stats., requiring the state tax
   commission to make a separate valuation of docks, piers,
   wharves, and grain elevators of public utilities, and sec.
   1211—29, providing that taxes based on such separate valua-
   tion shall be distributed to the towns and cities in which such
   docks, etc., are located, the city in which such properties are
   located is entitled to the full benefit of the taxes derived
   therefrom without any direct or indirect impairment, and the
   valuation thereof should not be included in the county board's
   equalization.
2. Under sec. 1211—6, Stats., declaring terminal properties of
   public utilities personal property to be assessed at the capital
   of the state, the local assessor has no duty to perform as to
   the assessment of such terminals.

APPEAL from a judgment of the circuit court for Ash-
land county: G. N. RISJORD, Circuit Judge. *Affirmed.*

*Certiorari* to the county clerk of *Ashland County* to re-
view the determination and assessment of the relative value
of all taxable property in each town, city, and village in the
county made by the county board of equalization pursuant
to sec. 1073, Stats. 1919. On defendant's motion to quash
the writ for the reason that the petition on its face shows
that petitioner is not entitled to the relief asked, petitioner
had judgment, and an adjustment of the resulting excess
of taxes levied on the city was ordered. The county appeals.

The petition in substance alleges: That the petitioner, city
of *Ashland,* is a municipal corporation of the state and an
independent taxing district of *Ashland County;* that the
county board of *Ashland County* met in 1919 pursuant to
sec. 1073 of the Statutes and determined and assessed the
relative value of all the taxable property in each town, city,
and village which collects taxes independently in said county,

including the petitioning city, in the amounts and proportions as set forth in a table; that the amounts so set forth are those recommended by the assessor of incomes for *Ashland County* for the year 1919; that the assessment of property in the city of *Ashland* as set forth in said table contained, and was increased by, an amount of $1,646,000 which petitioner alleges was unlawful; that said amount of increase was included by the said assessor of incomes for the following reasons stated by him: that he was directed by the Wisconsin tax commission to add the valuation of terminal properties in the city of *Ashland* to the aggregate true value of other property—otherwise such properties would escape entirely their share of state and county taxes; that the commission in making the state assessment does not include these properties and all the tax collected goes to the city of *Ashland;* that the city of *Ashland* thereby received $49,379.34, which amount, capitalized at the local tax rate of three per cent., gives a valuation of $1,646,000, which was added to the aggregate true value of the city, $8,887,248, making a total of $10,533,248.

The petition, continuing, alleged that the inclusion of any of this sum of $1,646,000 was illegal, was adopted by the county board over the protest of certain members, and would not have been included except through the advice of the tax commission; that the city of *Ashland* appealed to the tax commission from the aforesaid determination, but that the appeal was dismissed and the equalization of the county board approved and confirmed; that by reason of such illegal valuation the city of *Ashland* has been compelled to pay an unjustly large portion of state and county taxes for the year 1919, to its injury; and that the so-called "terminal property," being the property on which the tax commission makes a separate valuation of docks, elevators, and the like under sub. (4), sec. 1211—8, Stats. 1919, and on which the tax is returned to the municipality where such property

is situated under sec. 1211—29, Stats. 1919, is not property subject to local assessment and taxation.

Petitioner prayed for the writ in order that the action of the county board might be reversed and set aside or corrected by deducting said $1,646,000 from the aggregate assessment of the city of *Ashland,* and for such other and further relief as may be just and proper.

For the appellant the cause was submitted on the brief of *G. F. Merrill* of Ashland.

For the respondent there was a brief by *W. Stanley Smith,* and oral argument by *M. E. Dillon,* both of Ashland.

JONES, J.   The following is one of the sections of the statute relating to the taxation of public utilities:

"(4) After the property of a company shall first have been valued as a whole, if any docks, piers, wharves or grain elevators used in transferring freight or passengers between cars and vessels, shall have been included in such valuation, then for the purpose of accounting to the proper assessment districts, the commission shall make a separate valuation of each such dock, pier, wharf and grain elevator, including the approaches and appurtenances thereto."   Sec. 1211—8, Stats. 1919.

Sec. 1211—29 provides that all taxes paid by such companies

"derived from or apportionable to docks, piers, wharves or grain elevators and their approaches and appurtenances, on the basis of the separate valuation provided for in section 1211—8 shall be distributed to the towns, cities and villages in which they are located."

In *State ex rel. Superior v. Donald,* 163 Wis. 626, 158 N. W. 317, it was claimed that the provision in the statute for the distribution of taxes derived from terminal property to the municipality was unconstitutional.   The most serious objection urged was that the provision created an arbitrary discrimination and an improper classification, and resulted

in an inequality of burden between the municipalities of the state. In the decision Mr. Chief Justice WINSLOW followed the rule laid down in the case which sustained the validity of the law applying the system of *ad valorem* taxation to railway property and which placed the entire proceeds in the state treasury for state purposes. *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 108 N. W. 557. In the decision in this case Mr. Justice MARSHALL said (at p. 675):

"The idea indicated in the new order of laws is to value each railway property as one thing and on the same basis as other taxable property is valued, and to tax it on the same basis as such other property is taxed, throughout the state and as to each taxing district through which the road runs, as near as the same can be reasonably ascertained, keeping the results in the state treasury, upon the theory of a constructive accounting between the state and every taxing district which, in any reasonable view, would be entitled to any part thereof under the constitutional rule of uniformity."

In the *City of Superior Case, supra,* Mr. Chief Justice WINSLOW said (at p. 630):

"Time has demonstrated, however, that this constructive accounting does not accurately work out the result intended at terminal cities such as Superior, where there must be a vastly expensive and entirely different class of terminal from the ordinary land terminal of a railway company. The most striking illustration of this fact is furnished by the situation at the city of Superior itself, where it appears that the total assessed valuation in 1915 was $34,258,688, of which $7,717,604, or twenty-two and one-half per cent., was railroad wharfage property of this class.

"That the possession and maintenance of such property imposes upon the municipality in which it is located an enormous and peculiar burden, financially greater and essentially different in some of its characteristics from the municipal burdens borne by inland municipalities, seems very clear. The annual requirements for dredging, policing, and otherwise maintaining a great harbor so that the change from land to marine carriage can successfully go on, is an onerous burden, and it may, we think, be properly considered as so peculiar in its nature as to rightly suggest that the proceeds of taxation derived from these expensive joint agencies of

land and water commerce should be returned to the municipality which is under this peculiar burden while reaping little of benefit from its possession of them unless it be accomplished in this way. The legislature evidently concluded that the constructive accounting supposed to have been reached by the *ad valorem* law failed at this point, and passed the present law for the purpose of more perfectly fitting the fact to the theory and working out the constructive accounting principle with greater accuracy."

It was further held that there was legal ground for classification and that the statute caused no actual discrimination between the taxing units of the state.

The rule adopted in this decision applies with equal force to the city of *Ashland.* As we construe the statutes and the former decisions of this court, it was the legislative intent that cities of this character, by the system of accounting adopted between them and the state, should have the full benefit of the taxes derived from this class of terminal property on account of the peculiar and onerous burdens it imposes.

The tax rate in terminal cities may be considerably higher than the average tax rate throughout the state as determined by the tax commission, so that to add the true value of these terminals to the assessed value of the cities in which they are located may partly defeat even the purpose of the statute as it is interpreted by the appellant. The local tax rate in *Ashland* was higher than the average rate as fixed by the tax commission and the income tax assessor sought to meet the difficulty in this manner: He capitalized the portion of the total tax roll realized from the terminals at the local rate of taxation in the city of *Ashland.* In other words, one value was used to determine the tax and then another value was determined from the tax and was added to the assessment. We do not find in the statutes any warrant for this mode of procedure.

There is obviously no requirement in the statutes above quoted that the value of these terminals should be used by the county board or county clerk in the process of apportion-

ing the taxes.   Nor do we find in the other sections of the
statutes any such requirement.   The local assessor had no
duty to perform as to the assessment of these terminals.
The assessed value of this property was not included in the
reports transmitted to the county clerk which furnish the
basis of the apportionment.   By sec. 1211—6, Stats. 1919,
property of the class to which these terminals belong "is
declared to be personal property, and the place of assessment
and taxation of such property is fixed at the capital of the
state."

It is our conclusion that by virtue of the decisions and
statutes above referred to the city of *Ashland* is entitled to
the tax derived from these terminals without any impair-
ment directly or indirectly, and that the valuation of the
property in question should not have been included in the
equalization made by the county board.

*By the Court.*—Judgment affirmed.