B. F. STURTEVANT COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents.

*December 15, 1924—February 10, 1925.*

*Workmen's compensation: Death of employee without dependents: Fund contributed by employer as additional benefits to others: Constitutionality: Appropriations from state treasury: How made: Public or trust money: Moneys on deposit.*

1. The workmen's compensation act of 1911 should be liberally construed to carry out its beneficent purposes; and this rule applies with equal force to the many amendments added to the original act. p. 14.
2. No matter how beneficent or wise the legislation, however, the legislature must comply with the constitutional requirements in passing the act. p. 15.
3. Sub. (4m), sec. 102.09, Stats., complies with sec. 2, art. VIII, Const. (prohibiting the payment of money from the state treasury without appropriation by law), in view of par. (g) of that subsection, appropriating moneys paid into the treasury pursuant to par. (f) to the industrial commission for the discharge of all liability for additional death benefits accruing under such subsection. p. 15.
4. Sec. 8, art. VIII, Const., requiring a yea-and-nay vote in both houses of the legislature on the passage of any law which makes, continues, or renews an appropriation of public or trust money, is mandatory. p. 17.

5. Moneys paid into the state treasury under par. (f), sub. (4m), sec. 102.09, Stats., for additional death benefits accruing under such subsection, are intended solely for a special purpose, and are not public or trust money within the meaning of sec. 8, art. VIII, Const., requiring a yea-and-nay vote in both houses on the passage of a law appropriating such moneys. p. 21.

6. Words or terms used in a constitution, being dependent on ratification by the people, must be understood in the sense most obvious to the common understanding at the time of its adoption, and are presumed to have been used according to their plain, natural, and usual signification and import. p. 19.

7. The language of a constitution is not to be limited to the precise things considered therein, but embraces other things of the same general nature or class as they come into being. p. 19.

8. The words "public or trust money" in sec. 8, art. VIII, Const., requiring a yea-and-nay vote on the appropriation thereof, refer to public funds in which the general public has a beneficial interest, not to special funds held by the state treasurer as a mere depositary. p. 21.

9. Sub. (4m), sec. 102.09, Stats., requiring payment of certain moneys by an employer or his insurer into the state treasury, on the death of an employee without dependents, to create a fund for additional death benefits to other beneficiaries under the act, is not in violation of the due process and equal protection clauses of the Fourteenth amendment to the federal constitution. p. 21.

10. An employer voluntarily submitting to the compensation act as then existing submits to all amendments constitutionally enacted thereafter while continuing under its provisions. p. 21.
    ESCHWEILER, J., dissents.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

This is an appeal from a judgment affirming an award of the *Industrial Commission.*

This case involves an amendment to the compensation act. The *Industrial Commission* found that the appellant employer was liable under sub. (4m) of sec. 102.09, Stats., where an employee had come to his death through accident in the course of his employment, without dependents, and

ordered $1,000 to be paid into the state treasury for the benefit of persons entitled thereto under the act.   The appellant employer and the insurance carrier brought an action in the circuit court for Dane county to set aside this award, and in that action the circuit court affirmed the award, and the employer and insurance carrier appeal to this court.

The provisions of the law before us for construction and determination are a portion of ch. 328, Laws 1923, known as sub. (4m) of sec. 102.09, Stats., reading as follows:

"(4m) (a) Where the beneficiary under paragraph (a) of subsection (3) or (4) of this section is the wife or husband of the deceased employee and is wholly dependent for support, an additional death benefit shall be paid from the funds provided by paragraph (f) of this section for each child by their marriage living at the time of the death of the employee, and who is likewise wholly dependent upon him for support, such additional benefit to be computed from the date of the death of the employee according to the following schedule:

"(b) For the child one year of age or under, the equivalent of five sevenths of the average annual earnings of the deceased employee.   For children in each successive yearly age group the amount allowed shall be reduced by one fifteenth part of such five sevenths of such average annual earnings, with no allowances for any child over fifteen years of age at the death of the employee unless such child be physically or mentally incapacitated from earning, in which case the commission shall make such allowance as the equities and the necessities of the case merit, not more however than the amount payable on account of a child under one year of age.

"(c) A child lawfully adopted by the deceased employee and the surviving spouse, prior to the time of the injury, and a child not his own by birth or adoption but living with him as a member of his family at the time of the injury shall for the purpose of this subsection be taken as a child by their marriage.   The provisions of this subsection applicable in the case of a child one year of age or under shall attach in favor of a posthumous child.

"(d) Where the employee leaves a wife or husband wholly dependent and also a child or children by a former marriage or adoption, likewise wholly dependent, aggregate benefits shall be the same in amount as if the children were the children of such surviving spouse, and the entire benefit shall be apportioned to the dependents in such amounts as the commission shall determine to be just, considering their ages and other facts bearing on dependency. The benefit awarded to the surviving spouse shall not exceed four times the average annual earnings of the deceased employee.

"(e) Dependency of any child for the purposes of this subsection shall be determined according to the provisions of subsection (3) of section 102.11, in like manner as would be done if there was no surviving dependent parent.

"(f) In each case of injury resulting in death, leaving no person wholly dependent for support, the employer or insurer shall pay into the state treasury such an amount, when added to the sums paid or to be paid on account of partial dependency, as shall equal four times the deceased employee's average annual earnings, such payment to the state treasury in no event to exceed one thousand dollars.

"(g) The moneys paid into the state treasury pursuant to paragraph (f) of this subsection with all accrued interest is hereby appropriated to the industrial commission for the discharge of all liability for additional death benefits accruing under this subsection.

"(h) The additional benefits for account of each child shall accrue at the rate of ten per cent. of the surviving parent's weekly indemnity. The commission shall have authority to award such benefits to the surviving parent of such child, to his guardian or to such other person, bank or trust company for his use as may be found best calculated to conserve the interest of the child.

"(i) For the proper administration of the funds available under paragraphs (f) and (g) of this subsection the commission shall, by order, set aside in the state treasury suitable reserves to carry to maturity the liability for additional death benefit.

"(j) The benefits payable under this subsection when added to the indemnity paid and due at the time of death and those benefits payable to the surviving spouse shall not in the

aggregate exceed the maximum amount that might have accrued to the injured employee for permanent total disability if death had not ensued."

Par. (a) of sub. (3) and par. (a) of sub. (4), sec. 102.09, above referred to, are as follows:

"(3) (a) A sum equal to four times his average annual earnings, but which, when added to the disability indemnity paid and due at the time of death, shall not exceed the maximum amount which might have accrued to him for permanent total disability if death had not ensued."

"(4) (a) Where the accident proximately causes permanent total disability, it shall be the same as if the accident had caused death."

The appellants contend that the scheme enacted by the legislature is unconstitutional for the reasons: (1) that it was not passed in the manner required by sec. 8, art. VIII, of the state constitution; (2) that sub. (4m), sec. 102.09, Stats., violates certain provisions and guaranties of the federal constitution.

For the appellants there were briefs by *Harvey M. Burns* and *Hoyt, Bender, McIntyre & Hoyt,* attorneys, and *Van Dyke, Shaw, Muskat & Van Dyke,* of counsel, and oral argument by *Walter H. Bender* and *William T. Sullivan,* all of Milwaukee.

For the respondent *Industrial Commission* there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

CROWNHART, J.    The compensation act of the state of Wisconsin was passed in 1911.    Its general purposes were very carefully considered, and its constitutionality was upheld in *Borgnis v. Falk Co.* 147 Wis. 327, 133 N. W. 209. Since then this court has many times affirmed its beneficent purposes and declared the rule that it should be liberally construed to carry out such objects.    This rule applies with equal force to the many amendments that have been added to the original act by subsequent legislation.    The amend-

ment under consideration is intended to carry out a wise public policy of spreading the risk or loss in certain cases so as not to bear too heavily upon the individual employer affected, and to prevent discrimination in the employment of certain classes. It recognizes that in the case of the death of an employee with a large family of small children, the compensation, in order to be adequate and equitable, must be much larger than in cases of dependency where only one person was dependent upon the deceased for support. It also recognizes that to assess larger compensation against the particular employer in such cases results in undue hardship on the employer, and very naturally might tend to induce employers to employ single men or men with small families, to the prejudice of those with larger families. This purpose of the legislature seems to be plainly indicated in the legislation here challenged.

But no matter how beneficial or wise the legislation, it must be conceded that the legislature must have complied with constitutional requirements in passing the act. Sec. 2, art. VIII, Wisconsin constitution, provides: "No money shall be paid out of the treasury except in pursuance of an appropriation by law."

The act in question requires that certain funds be paid into the state treasury and paid out of the state treasury by direction of the *Industrial Commission.* It therefore comes clearly within sec. 2, art. VIII, and the money can be paid out of the state treasury only in pursuance of an appropriation by law.

Par. (g) of sub. (4m) of sec. 102.09 provides:

"The moneys paid into the state treasury pursuant to paragraph (f) of this subsection with all accrued interest is hereby appropriated to the industrial commission for the discharge of all liability for additional death benefits accruing under this subsection."

The provision of the constitution is positive and prohibitory, but the language of the statute uses apt and appropriate terms to constitute an appropriation by law, and we enter-

tain · no doubt that the legislature complied with sec. 2, art. VIII, in the amendment of the compensation statutes in question.

In the passage of the act, however, the Senate did not have a yea-and-nay vote on the bill, and it is the contention of the appellants that the act is therefore invalid as in violation of sec. 8, art. VIII, of the .constitution.    Sec. 8, art. VIII, provides:

"On the passage in either house of the legislature of any law which imposes, continues or renews a tax, or creates a debt or charge, or makes, continues or renews an appropriation of public or trust money, or releases, discharges or commutes a claim or demand of the state, the question shall be taken by yeas and nays, which shall be duly entered on the journal; and three fifths of all the members elected to such house shall in all such cases be required to constitute a quorum therein."

It is plain that the act "makes . . . an appropriation of . . . money" in the public treasury, but the question to be determined is whether or not the money so appropriated is "public or trust money" within the meaning of the constitutional provision.

There is a significant difference in the language used in the two sections of the constitution.    In sec. 2 the language is, "No money shall be paid out of the state treasury," while in sec. 8 the words "makes . . . an appropriation of public or trust money" are a qualified expression indicating that there might be other money in the treasury not subject to the limitation.

This latter section of our constitution is found in the draft of the state constitution of 1846, which was defeated by vote of the people.    The next draft of the constitution, which was adopted in 1848, contained the same provision. The same provision in almost identical language is found in the New York constitution of 1846, and it is a fair presumption that this language was borrowed from the New York document.    We do not find the same provision in any

of the other constitutions of the states. In New York the court has held that this provision is directory and not mandatory. *People v. Supervisors of Chenango,* 8 N. Y. 317 (1853). We think the better rule, however, is that the section should be considered mandatory, and we so hold. *State v. Wendler,* 94 Wis. 369, 377, 68 N. W. 759; *State ex rel. Postel v. Marcus,* 160 Wis. 354, 366 *et seq.,* 152 N. W. 419; 25 Ruling Case Law, 898, 900; Cooley, Const. Lim. (7th ed.) 193–195; 1 Lewis' Sutherland, Stat. Constr. (2d ed.) secs. 46–48.

In *People v. Supervisors of Chenango, supra,* however, the court held that a "commutation tax" on members of the militia in line of service was not a tax within the meaning of the constitution, basing its judgment principally on the ground that it did not come within the abuses sought to be prevented by the section. The commutation tax was not a tax generally on the public for the benefit of the state at large, but was a levy on the individual members of the militia who did not respond to the services required. In other words, it was largely a private and local tax for private and local matters, although in general it served a public purpose. The court construed the constitutional provision to mean that the tax referred to therein was a general tax in its operation and co-extensive with the state. The New York court has also held that an act that provides for compensation for property destroyed by riot does not create a debt within the meaning of that section. *Darlington Case,* 31 N. Y. 164, affirming 2 Rob. 274.

In *People ex rel. Einsfeld v. Murray,* 149 N. Y. 367, 44 N. E. 146, the court passed upon an act of the legislature which provides for the collection by the state of liquor licenses in the various municipalities and then appropriates the proper proportionate funds back to the municipalities. The court held in that case that the constitutional requirement that "the assent of two thirds of the members elected to each branch of the legislature shall be requisite to every

bill appropriating public moneys or property for local or private purposes" did not apply. The court said:

"The money levied and collected is not the money of the state. It is the money of the town, city, or village in which under the exercise of corporate powers it was levied and collected, and to it the state has no title." Page 375.

Under that law, it is true, the funds were diverted before they reached the state treasury, but they were collected by a state agency for a special purpose, and the act did appropriate the moneys so collected to a local or private purpose. The crux of the decision was that the money so collected never became public moneys. The court further said:

"Clearly it cannot appropriate the public moneys of the state for a local though public purpose, except by a two-thirds bill, and this whether the money is actually in the treasury of the state or in process of collection." Page 379.

In a Texas case the court said:

"By 'public money' as therein used [sec. 51, art. III, Const.], the framers of the constitution most probably meant moneys received by officers of the state, and belonging to the state, derived in the ordinary processes of taxation, and in other ways permissible under the constitution." *Tarrant Co. v. Butler,* 35 Tex. Civ. App. 421, 426, 80 S. W. 656, 659.

And in an Ohio case it was held that moneys paid into the county treasury, derived from special assessments, in proceedings for location of a ditch, under the statutes of that state are not "public funds in the hands of the county treasurer." *Loe v. State,* 82 Ohio St. 73, 93, 91 N. E. 982.

The framers of our constitution dealt with two classes of funds, one the general public fund raised by taxation, and the other, funds from the sale of public lands dedicated for school purposes. The latter funds constituted trust funds for the purposes there designated. Art. X, secs. 2, 6, 7, and 8.

Coming back to the act in question, it is clear that the moneys paid into the state treasury under the act are intended solely for a special purpose, and that the funds never take on the nature of general public funds or public trust funds.

That they are trust moneys in a special and limited sense may be conceded. But we are to consider whether they are "trust money" as that term is used in the constitution. The rule of constitutional construction, where the document is submitted to the electors for adoption, is correctly stated as follows: .

"Words or terms used in a constitution, being dependent on ratification by the people, must be understood in the sense most obvious to the common understanding at the time of its adoption, although a different rule might be applied in interpreting statutes and acts of the legislature. This gives rise to the recognized rule of construction that it is presumed that words appearing in a constitution have been used according to their plain, natural, and usual signification and import, and the courts are not at liberty to disregard the plain meaning of words of a constitution in order to search for some other conjectured intent." 6 Ruling Case Law, sec. 47, p. 52, tit. "Constitutional Law."

So we query: What would be the most obvious understanding of these words by the general run of voters to whom they were submitted? As the document as a whole did not deal with any funds of the character and purpose of the funds here involved, the voters' attention would not be directed thereto. The funds with which the proposed constitution dealt were public moneys,—moneys raised by taxation or sale of public lands, moneys in which all the people had a direct beneficial interest. The language of a constitution is not to be limited to the precise things considered therein, but it embraces other things as they come into being, of the same general nature or class. Other trust funds might be created from time to time which would be public

funds and in which all the people of the state would have a beneficial interest, and such funds would naturally fall within the meaning and intent of the constitutional provision. But the language does not naturally or reasonably apply to funds in which the public generally have no such beneficial interest and about which they naturally gave no consideration. Then, too, the same reasons do not apply, as the decisions cited clearly show. The public are specially interested in the actions of their legislators in spending their money. They want publicity, and hence the yea-and-nay vote. They want careful consideration and a full vote, hence the three-fifths rule as to a quorum. This is not true in a like degree of special funds in which they have no financial interest. Take the particular fund here under consideration. It is made up from exactions from employers who voluntarily come under the provisions of the law. They are rewarded by benefits of equal value. Their risks are spread in the manner of insurance, and they escape large awards that might be otherwise directly assessed against them. The money so collected is paid out to a limited class of dependents of employees who have suffered misfortune in their employment. The general public are interested in the general scheme of compensation, but they are no more interested in this particular fund than they are in the compensation paid by employers directly to injured employees and which never reaches the public treasury.

The same kind of an amendment was made to the compensation act by sec. 2, ch. 680, Laws 1919, which law did not have a yea-and-nay vote in the Senate. That act has not been contested.

The scheme is much the same in effect as that of the life fund created by ch. 577, Laws 1911, which provides for voluntary payments by policy-holders into the state treasury, and which is administered by the insurance commissioner and paid out of the treasury on his order to the beneficiaries. This act was also passed without a record vote. There are,

no doubt, other funds in the treasury held in trust for special purposes. For instance, taxes collected on dock properties, assessed and collected by the state for the benefit of the particular municipalities in which the properties are located. Ch. 407, Laws 1915, sustained in *State ex rel. Superior v. Donald,* 163 Wis. 626, 158 N. W. 317. In that case the court passed on a somewhat analogous situation to that here involved. It was there contended that the statute was unconstitutional because "it appropriates money of the state [public money] for a local purpose and not a state-wide public purpose." The court answered this objection by saying:

"The first objection may be quickly disposed of by the self-evident proposition that if this legislation is otherwise valid, *i. e.* if there is no constitutional objection of any other nature which stands in the way, then these funds are not in any true sense state funds, but simply funds belonging to the city of Superior which have been collected by the state as a matter of convenience in the administration of the tax laws and are temporarily held by the state treasurer as custodian only for the city and are to be turned over to the owner upon proper demand. We pass, therefore, to the consideration of the other objections."

We are therefore of the opinion that the words "public or trust money" as used in sec. 8, art. VIII, of the state constitution refer to public funds in which the general public has a beneficial interest and not to special funds held by the state treasurer as a mere depositor, and in which the general public has no beneficial interest.

It is further claimed by the appellants that the legislation in question is in violation of the due process and equal protection clauses of the Fourteenth amendment to the federal constitution. These objections are set at rest by the decision of the United States supreme court in the case of *R. E. Sheehan Co. v. Shuler,* 265 U. S. 371, 44 Sup. Ct. 548.

The appellant employer voluntarily submitted to the compensation act as it existed at the time it became subject

thereto, and to all amendments to the act constitutionally enacted thereafter while it continued under its provisions (*Brenner v. Heruben,* 170 Wis. 565, 176 N. W. 228), and the statute, being duly enacted, is a valid law.

*By the Court.*—The judgment of the circuit court is affirmed.

ESCHWEILER, J. (*dissenting*).    The amounts here involved are required to be paid by employer or insurer into the state treasury.    We are all agreed that once in the treasury it can only come out by an appropriation by the legislature pursuant to sec. 2, art. VIII, Const.    The majority are of the opinion that it may nevertheless be taken out and appropriated to the *Industrial Commission* for the discharge of certain designated liabilities without the yea-and-nay vote required under sec. 8, art. VIII, Const., for any law which makes an appropriation of *"public or trust money."*

The court holds that these funds, appropriated as they are to the *Commission* to be paid out to persons who in no wise contributed to such funds and who have no contractual or family relationship with those who do pay in, though in effect *trust money,* still are not the *trust money* included in the section of the constitution above quoted, and that the constitution meant by *trust money* only that which is now called *public trust money.*

To me that seems like reading something into the constitution rather than construing it.

The phrase "public or trust money" contrasts *public money* with *trust money,* thereby implying, it seems to me plainly, a division of all the funds paid into and held in the state treasury into two all-embracing classes, viz.: one, public money which may be devoted to the general purposes of the state; the other, *trust money,* all that which is devoted to designated and specific purposes and thereby impressed with a trust for each such specific purpose.    The money here involved is clearly impressed with a trust for a specific definite

purpose, under the general and public welfare doctrine which is the basis of the workmen's compensation law, and particularly of such provisions thereof as are here presented, is to be paid into the treasury, and therefore is entitled to the protection intended to be thrown around public or trust money by the constitution.

I cannot see what kind of money can properly be paid into or held in the state treasury other than public money or trust money as above differentiated.

The school fund so carefully provided for in art. X, Const., is not there denominated a trust fund or trust money, but clearly is within the term "trust money" in said sec. 8, art. VIII, *supra,* and yet certainly could not have been the only trust money intended to have been originally included in said sec. 8, for then that would have been so said by expressly so providing for it, it being the only fund then provided for by the constitution in the nature of trust money as distinguished from public money.

The constitution builded for the future as well as the then present, and when it threw these safeguards around withdrawals from moneys in the state treasury I think it carefully provided for all funds—those subject to general appropriation and public purposes, and those which must be devoted to some special or trust purpose. I think the framers intended to play no favorites and make no exceptions. For these reasons I dissent.