THE HONORABLE, THE ASSEMBLY
By 1971 Assembly Resolution 22, you request my opinion as to whether county supervisors, who are specified to be county officers in sec. 59.03
(2) (d), Stats., must not therefore be elected on a partisan basis at the general election in November in accordance with Art. XIII, sec. 1, Wis. Const.
The answer to your question is "no." The historical context in which Art. XIII, sec. 1, Wis. Const., was enacted *Page 498 
shows that the words "county officers," as used therein, were never considered to include county supervisors. This construction of that constitutional provision is not changed by a statute subsequently enacted. Such a change could be accomplished only by an amendment to the constitution.
Section 59.03 (2) (d), Stats., was repealed and recreated by ch. 20, Laws of 1965, to read, in part, as follows:
"(d) Election and term of supervisors. Supervisors are county officers
and shall be elected for 2-year terms at the election to be held on the first Tuesday in April in even-numbered years and shall take office on the 3rd Tuesday in April of that year. . . ." (Emphasis added)
This provision was enacted as part of the statutory revision concerning county board representation which was motivated, in part at least, byState ex rel. Sonneborn v. Sylvester (1965), 26 Wis.2d 43, 132 N.W.2d 249. In that case, the court held that the then existing system of county board representation, set forth in sec. 59.03 (2), 1963 Stats., which provided that the board would be composed of town chairman and supervisors from villages and city wards, irrespective of population, was unconstitutional because it violated the equal-protection clause of the Fourteenth Amendment of the Federal Constitution and Art. I, sec. 1, Wis. Const.
Article XIII, sec. 1, Wis. Const., originally read simply as follows:
"SECTION 1. The political year for the state of Wisconsin shall commence on the first Monday in January in each year, and the general election shall be holden on the Tuesday succeeding the first Monday in November in each year."
However, the constitutional provision was subsequently amended in 1882, and presently reads:
"SECTION 1. The political year for the state of Wisconsin shall commence on the first Monday in January in each year, and the general election shall be holden on the Tuesday next succeeding the first Monday in November. The first general election for all state and countyofficers, except judicial officers, after the adoption of this amendment *Page 499 shall be holden in the year A. D. 1884, and thereafter the generalelection shall be held biennially. All state, county or other officers elected at the general election in the year 1881, and those term of office would otherwise expire on the first Monday of January in the year 1884, shall hold and continue in such offices respectively until the first Monday in January in the year 1885." (Emphasis added)
One effect of the 1882 amendment was to change the general election from an annual election to a biennial election. However, the amendment also clearly provided that "all state and county officers, except judicial officers" would be elected at the 1882 general election and at biennial general elections thereafter.
As will become evident in the course of the subsequent discussion of the above quoted statute and constitutional provision, no matter how positive be the statutory declaration in sec. 59.03 (2) (d), Stats., that members of the county board of supervisors are "county officers," the statute cannot now have the effect of bringing that office within the constitutional requirement that county officers be elected at the November general election, unless such officers were considered as within the meaning of the term "county officers" when those words were incorporated in Art. XIII, sec. 1, Wis. Const., by the 1882 amendment.
A certain measure of ambiguity regarding the nature of the office held by a member of a county board of supervisors has admittedly persisted from the time of the initial adoption of the Wisconsin Constitution to the present day. Some of the confusion concerning the office has undoubtedly been generated by the fact that specific questions relating to the status or supervisors have often arisen in reference to a particular statute. In such instances, of course, the language of the specific statute was a primary consideration, and, therefore, for some purposes and in certain contexts a supervisor was considered a county officer, while under other circumstances he would not be so considered. See 1 OAG 781 (1912); 4 OAG 957 (1915); 12 OAG 279 (1923); 14 OAG 51 (1925); 15 OAG 172 (1926); 19 OAG 268 (1930); 20 OAG 85 (1931); 25 OAG 48 (1936); 32 OAG 404 (1943); 47 OAG *Page 500 
32 (1958). Likewise, some uncertainty has probably resulted from the fact that although the Wisconsin Constitution does make a number of specific references to county boards of supervisors, it has remained largely silent as to the type of boards required and as to the method to be utilized in constituting such boards.
Nevertheless, although county boards have changed form a number of times because of the flexibility inherent in the fundamental law of our State, it will be noted that the organization of such boards with supervisorial districts, based principally upon minor political units or subdivisions of government within the county, was by far the dominant system from territorial days until such system was finally held unconstitutional in State ex rel Sonneborn v. Sylvester, supra. As the court points out at pp. 52-53 of that opinion:
"By the time our constitution was established in 1848 the state was divided into 29 counties, all of which had established a large board town-county government [consisting of the chairmen of the town boards] excepting Grant, Green, Iowa, Lafayette, and Sauk counties, which had adopted the small board or commission form [composed of three commissioners elected at large]. Thus, `At and prior to the time of the adoption of the constitution there existed considerable diversity in town and county government in the territory of Wisconsin.' State ex rel.Busacker v. Groth (1907), 132 Wis. 283, 285, 112 N.W. 431. This diversity resulted in the enactment in the constitution by sec. 23, art. IV, that, `The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable; . . .' Thusthe type and method of composition of county boards was not resolved bythe constitution which also provided in sec. 22, `The legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local, legislative and administrative character as they shall from time to time prescribe.' (Emphasis added)
"In 1849 the new state legislature provided a town-county system which provided that towns were to be supervisorial districts but also provided for supervisors from cities . . . ." *Page 501 
It is hardly surprising that, upon the adoption of the constitution, the legislature would adhere to past practice and exercise the more generally accepted of the options it felt was available by electing to establish a supervisorial system in each county which was based on representation from the various basic units of local government within such county. Under such a system the emphasis would logically be placed on the individual unit of government rather than the county government. As pointed out above, prior to the adoption of the constitution, the organization of most of the counties had been based on a system whereby election to town office was a prerequisite to county board membership, i.e., chairmen of the town boards were members of the county board exofficio. Under such circumstances, these town chairmen were essentially town supervisors who were given additional responsibilities and authority when acting jointly with other town supervisors, as a county board oftown supervisors. Conceived in this context, they could only be considered as county officers in a very general sense. Furthermore, as pointed out in my March 24, 1971, opinion to the Joint Committee on Legislative Organization, on the matter of legislative reapportionment, town government in Wisconsin not only formed the basic fabric of local government prior to the adoption of our constitution in 1848, but also continued to play an intimate role in the early evolution of the law of municipal corporations in our State. At page 6 of that opinion the following is stated:
"The early importance of town government as a basic governmental unit is demonstrated by the fact that when the village of Milwaukee incorporated as a city in 1846 each of its wards were designated as `a separate township or town under the laws regulating town and county government' and the three aldermen of each ward were ex-officio supervisors of such towns. Also, some of the early Wisconsin villages incorporated by special acts were joined to towns for state or county elections by virtue of such acts. Jones v. Kolb (1882), 56 Wis. 263, 267,14 N.W. 177. Likewise, villages organized under such general laws as ch. 70, R.S. 1858, retained the right to vote at town elections." *Page 502 
As might well be expected, the general and more persistent concept of the county board, as consisting of a number of individual local (town) supervisors sitting together as a county board of local supervisors, became no more difficult to apply to city wards and villages than it had been when the only supervisors sitting on the county board were town supervisors.
The foregoing legislative history indicates, in general, that although a member of a county board may have been considered to be a county officer in the broadest and more general sense of the term, he was not usually treated as a county officer by the territorial legislatures before the adoption of the Wisconsin Constitution, nor by legislatures during the early formative years after the adoption of the Constitution.
It should be noted, however, that by virtue of the provisions of ch. 129, Laws of 1861, for a relatively short period of time in the 1860's the election of supervisors in every county was based solely on the number of assembly districts within each county. During this period, inState ex rel. Gill v. The Board of Supervisors of Milwaukee County
(1867), 21 Wis. *443, the court considered the case of a supervisor who found he no longer resided in the district for which he had been elected because of changes in assembly district boundaries subsequent to his election. The question was whether such supervisor's office became vacant because he ceased to be an inhabitant of the local district "for which he shall have been elected or appointed, or within which the duties of his office are required to be discharged." Sec. 2, ch. 14, R.S. 1858. In light of the statutory provisions involved, the court held that the supervisor did not hold a local office in the sense that the incumbent must reside in the district until the end of his term, or forfeit his office, stating, at page *447, "Every supervisor is emphatically a county officer."
Although the holding in this early decision obviously requires our careful consideration, it does not appear to dispose of the question you raise. First of all, the system under consideration in the Gill Case,supra, was not representative *Page 503 
of the usual type of board which generally existed in most counties from the first days of statehood up until the Sonneborn decision. It may be of some significance, in fact, that the assembly district system was abandoned shortly after this decision and that the county boards of all counties were reorganized and the system of county government changed by chs. 84 and 85, Laws of 1870, so as to provide that county board members would consist of town board chairmen and supervisors chosen from cities and incorporated villages. Moreover, the question before the court arose solely under the then current statutes, most specifically ch. 129, Laws of 1861, and did not involve any constitutional considerations. Thus, when similar questions have subsequently arisen, the case has generally been distinguished and an opposite conclusion reached, based on the substantial dissimilarities in the statutory language being considered in each instance. 1 OAG 781 (1912); 16 OAG 717 (1927); 32 OAG 404 (1943).
In considering whether county supervisors are among the "county officers" referred to in Art. XIII, sec. 1, Wis. Const., it is important to note that the same legislature and the same legislative act which submitted the above amendment of Art. XIII, sec. 1, to a vote, i.e., ch. 290, Laws of 1882, also proposed the amendment of Art. VI, sec. 4, Wis. Const. The adoption of the latter amendment had the effect of altering the first sentence of that constitutional provision in the following manner:
"SECTION 4. Sheriffs, coroners, registers of deeds, [and]* district attorneys, and all other county officers except judicial officers, shall be chosen by the electors of the respective counties, — once in every two years. [, as often as vacancies shall happen.]* * * *"
* [EDITORS' NOTE: THE TEXT CONTAINED WITHIN THE BRACKETS WAS STRICKEN THROUGH IN THE ORIGINAL TEXT.]
An additional sentence was also added to the end of this section, which provided that vacancies in such county offices would be filled by appointment.
In view of the contemporaneous nature of both of the above amendments and the obvious similarity of language, it is quite reasonable to conclude that the term "county officers" may have been used in the same sense in both constitutional provisions. It is, therefore, appropriate to consider *Page 504 
the manner in which this term, as used in Art. VI, sec. 4, Wis. Const., has been treated by our Supreme Court.
In State ex rel. Williams v. Samuelson (1907), 131 Wis. 499,111 N.W. 712, the court was confronted with the question as to whether a county supervisor of assessments was a "county officer" within the terms of Art. VI, sec. 4, Wis. Const. In concluding that such officer did not fall within the meaning of that constitutional provision, the court pointed out that a person may be considered a county officer in a broad general sense when at the same time he could not be viewed as a "county officer" in the restrictive sense in which those words are to be taken in interpreting Art. VI, sec. 4, Wis. Const. Thus, the court states, at pp. 502-504:
"Whether the office here alleged to be usurped is strictly a county office or not, it quite clearly pertains to a county, within the meaning of the law. The name of the office is `county supervisor of assessment,' and the duties incident thereto are confined to and extend throughout the county. In the broad general sense of the term, the office is a county office.
". . .
"Conceding for the purposes of the discussion that in the broad, most comprehensive meaning of the term `county officers' a county supervisor of assessment would be included therein, the ultimate question is whether the language is to be taken in that sense or in a restricted sense excluding such officers."
The conclusion of the court in reference to the question under consideration appears at page 509:
"In determining whether the words `all other county officers' were used in the constitution in their particular sense, the affirmative is suggested at once by the rule of noscitur a sociis. Several but not all of the principal heads of county government required to have their offices at the county seats and ordinarily in the building provided for that purpose are mentioned, followed by the term `all other county officers except judicial officers.' In that we have a very strong indication that minor officials not usually thought of when *Page 505 
the term `county officials' is used were not intended to be included, but only sheriffs, coroners, registers of deeds, and the like. Such indication is emphasized, as we shall see, with striking significance by the conditions existing at the time of the formation of the constitution and at the time sec. 4, art. VI, was amended into its present form, and the way the subject has always been treated by the legislature as we have heretofore seen."
And, at page 512:
"Without further discussion we are constrained to hold that the term`all other county officers' was used in the instance in question inharmony with the statutory division of officers into state, county, andtown officers existing at the time of its incorporation into thefundamental law. . . ." (Emphasis added)
In view of the foregoing statements of the court emphasizing the importance of historical perspective in determining whether a particular office is a "county office" in the constitutional sense, it appears imperative to consider more specifically how the office of supervisor was viewed immediately prior to and after the 1882 amendment to Art. XIII, sec. 1, Wis. Const. A good indication of the character of the office, at least in the minds of the contemporary legislatures, is reflected by the laws which they adopted. These acts constitute a contemporaneous legislative construction of this constitutional provision and as such should be accorded great defense. Payne v. City of Racine (1935), 217; Wis. 550, 259 N.W. 437; State v. Johnson (1922), 176 Wis. 107,186 N.W. 729. As previously stated in 57 OAG 45 (1968) at page 47:
". . . It is presumed that words used in a constitution are to be given the natural and popular meaning in which they were usually understood by the people at the time of adoption. Payne v. Racine [supra, p. 555], B.F. Sturtevant Co. v. Industrial Comm. (1925), 186 Wis. 10, 19,202 N.W. 324. In order to discover the intent of the framers of the constitution, reference may be had to other constitutional provisions, history of the times, state of the contemporary society, and prior well known practices. State ex rel. Zimmerman v. Dammann (1930), 201 Wis. 84,89, 228 N.W. 593. However, *Page 506 
such constitutional language is to be construed in the light, not only of the conditions prevailing at the time of the adoption of the constitution, but also with reference to the changed social, economic, and governmental conditions and ideals of the present time. Borgnis v.Falk Co. (1911), 147 Wis. 327, 349, 133 N.W. 209."
Much of the legislation pertinent to the present question was previously cited in 14 OAG 51 (1925) as supporting the conclusion that supervisors are not county officers under the provisions of Art. VI, sec. 4, Wis. Const., and therefore not governed by its provisions which establish two-year terms for county officers. At the time of that opinion, as at present, sec. 59.03 (1) (b), Stats., provided for a four-year term of office for Milwaukee supervisors. The following discussion of legislative history, appearing at pp. 54-55 of the opinion appears appropriate here:
"In the revised statutes of 1878 the following provisions occur:
"`SECTION 662. Every ward or part thereof of any city, and every incorporated village or part thereof, shall be represented in the county board of supervisors * * * by one supervisor, who shall be elected annually * * *.'
"`SECTION 663. The county board of supervisors shall consist of the chairman of each of the several towns, and the supervisor of each ward, and part of ward of every city, and of each incorporated village, and part of such village situated in the county.'
"* * *
"It is significant to note that the sections referred to, set forth above, are contained in ch. 36, Stats., which is headed `OF THE COUNTY BOARD.' The following section is contained in ch. 37, R.S. 1878, and is headed `OF COUNTY OFFICERS':
"`SECTION 698. At the general election in the year one thousand eight hundred and seventy-eight, and biennially thereafter, there shall be elected in each county, for a regular term, the following county officers, viz.: a county clerk, *Page 507 
treasurer, sheriff, coroner, clerk of circuit court, district attorney, register of deeds, surveyor, and in the year one thousand eight hundred and seventy-nine and biennially thereafter, a county superintendent of schools in each superintendent district thereof, * * *. The regular term of office of all county officers above named shall commence on the first Monday of January next succeeding their election, and continue two years; but each such officer including those now in office, shall hold his office until his successor is qualified.'
"This, then, shows the legislative conception in 1878, which was just prior to the adoption of the amendment. The county officers who were conceived to be such were included by the legislature in the section above set forth. Since supervisors were not included, it would appearthey were not considered county officers. The amendment which provides for the election every two years of `all county officers' was passed by the legislature in the year 1881. It was also passed again by ch. 290, Laws 1882, and was submitted to the people and ratified by them in November, 1882. (Emphasis added)
"Proceeding now to a consideration of the legislative enactment subsequent to the constitutional amendment, it appears that the same conception of county officers was entertained. By ch. 111, Laws 1883, the following provision was enacted:
"`The county board of supervisors shall consist of the chairman of each of the several towns and the supervisor of each ward and part of ward of every city, and of each incorporated village and part of such village situated in the county; * * * nor shall any county officer, or deputy county officer be eligible to any office named in this section; providing nothing herein shall affect the power of the county clerk under section 665 of the revised statutes.'
"Here, then, is a very clear statement of the legislative conception as to whether or not supervisors were county officers. This law was passed by the legislature convening immediately after the adoption of the amendment. Many of the members were undoubtedly members of the legislatures *Page 508 
which had passed the amendment. It clearly shows that, for the purpose ofthe amendment supervisors were not considered county officers." (Emphasis added)
Furthermore, by the time of the 1882 constitutional amendments, elections for members of the county board were generally held in the spring. Thus, sec. 782, R.S. 1878, provided that town supervisors, including the town chairman who would sit on the county board, would be elected at the annual town meeting held on the first Tuesday of April. Similarly, secs. 871, 875 and 882, R.S. 1878, when read together, provided that supervisors from villages would be chosen at the annual charter elections held on the first Tuesday of May in each year to "represent the village in the county board." Likewise, sec. 663, R.S. 1878, provided that electors from cities and villages would select supervisors "at the same time and in the same manner as city and village officers are elected." I consider it significant that the constitutional amendments of 1882 caused little, if any, alteration in the provisions of these statutes, and that the law generally continued to provide for the spring election of supervisors. It was ch. 178, Laws of 1883, in fact, that authorized every incorporated village or city, not existing under special charter, to change the time for holding the annual elections "from the time now fixed by law to the first Tuesday of April in each year." Likewise, when the 1874 special charter of the City of Columbus was amended at about the same time, by ch. 181, Laws of 1883, it continued to provide for the spring election of "one supervisor to represent his ward in the board of supervisors of Columbia County."
In light of the foregoing, it is quite evident that the legislature did not conceive of supervisors of county boards as being county officers within the meaning of Art. XIII, sec. 1, Wis. Const., and did not intend that the 1882 amendment to that provision require the election of county supervisors at the November general election. Since the purpose of the construction of a constitutional amendment is to give effect to the intent of its framers and of the people who adopted it, KaydenIndustries, Inc. v. Murphy (1967), 34 Wis.2d 718, 150 N.W.2d 447, the fact that supervisors are now designated *Page 509 
as county officers under the provisions of sec. 59.03 (2) (d), Stats., is not controlling.
RWW:JCM